ZELKO ET AL., APPELLANTS, *v.*
PARSONS ET AL., APPELLEES.

(Nos. 49659 and 49660 — Decided December 16, 1985.)

*Leon M. Plevin, David M. Paris* and *Joel Levin,* for appellants.

*James T. Millican* and *Stanley S. Keller,* for appellees.

KRUPANSKY, J. On August 15, 1980, Nada Zelko, Joseph Zelko and Irene Kozelj ("appellants") were riding in an automobile which was involved in a collision with an automobile driven by Laura J. Parsons. The total special damages suffered by appellants amounted to approximately $50,000. Laura J. Parsons carried liability insurance in the amount of $12,500 per person, $25,000 per accident. Parsons' insurance carrier offered to pay appellants the $25,000 per accident limit of the policy. In an effort to receive additional compensation for their injuries, appellants[1] brought a declaratory judgment action against their insurance carrier, State Automobile Mutual Insurance Company ("State Auto"), seeking to recover under the underinsured motorist provision of their policy; State Auto cross-claimed and also sought declaratory judgment. All three appellants are insureds under the State Auto policy.

Both the appellants and State Auto sought summary judgment on the issue of the amount of State Auto's liability to the appellants under the terms of the underinsured motorist provision of appellants' policy. State Auto claimed the $25,000 offered by Parsons' insurance company should be "set off" or deducted from the $35,000 per accident limit of State Auto's underinsurance provision, thus rendering State Automobile liable to appellants in the amount of $10,000. The appellants, on the other hand, claimed State Auto's proposed setoff from its policy limit by the amount tendered by the tortfeasor's insurer was contrary to the intent of R.C. 3937.181[2] and against public policy. Appellants also claimed State Auto was required to consider the claims of each appellant separately and successively rather than setting off the total sum tendered by the tortfeasor from the limits of appellants' underinsurance policy.

The trial court granted summary judgment for State Auto and concluded its lengthy opinion by holding as follows:

---

[1] The Zelkos and Kozelj originally brought separate actions which were consolidated below and remain consolidated on appeal.

[2] R.C. 3937.181 provided for the mandatory offering of underinsured motorist coverage; it has since been incorporated into the present R.C. 3937.18. The statute was in effect from June 25, 1980 until June 23, 1982. Thus, it was in force at the time of appellants' accident. Pertinent sections of the statute are cited *infra.*

"[Appellants] are to receive from [State Auto] the underinsured policy limit of $35,000.00 less the amount received from Dairyland Insurance Company, defendant Laura J. Parson's [*sic*] insurer."

Thus, the trial court clearly approved of the principle of allowing State Auto to set off sums paid to appellants by the tortfeasor from the underinsurance policy limits. However, the trial court's holding does not set forth the manner in which the setoff is to be applied. State Auto contends the appellants were to receive a single payment of $10,000 in addition to the $25,000 offered by the tortfeasor's insurance company. Appellants, alleging both the trial court and State Auto have misapplied the applicable law, assign the following error:

"The trial court erred in granting defendant's motion for summary judgment based upon the erroneous assumption that the policy behind underinsurance and the public policy of Ohio should be disregarded in order to benefit an insurer."

Appellants argue this assigned error under alternative theories. Initially, appellants claim the setoff is *per se* invalid as contravening the public policy behind underinsured motorist coverage. However, appellants argue, if the principle of setoffs is authorized, then the manner of setoff proposed by State Auto must be altered from the collective approach used by State Auto to an approach which considers appellants' claims separately.

The question of whether an underinsurance carrier may apply payments made by or on behalf of an underinsured motorist as to setoff directly against the limits of its underinsurance motorist coverage was recently answered by the Ohio Supreme Court in *James* v. *Michigan Mut. Ins. Co.* (1985), 18 Ohio St. 3d 386. The court unequivocally approved of such setoffs if certain conditions exist. An examination of the facts and analysis present in *James* demonstrates the applicability of *James* to the case *sub judice*.

As does the case *sub judice*, *James* involved an automobile accident which occurred at a time when R.C. 3937.181[3] was in effect. Billy James suffered damages in excess of $37,500 as a result of an accident with a motorist who had total liability coverage in the amount of $12,500. After receipt of the $12,500 from the tortfeasor, James sought the full $25,000 limit of his underinsurance motorist coverage; his underinsurance carrier set off from the $25,000 policy limit the $12,500 paid by the tortfeasor and paid James the balance of $12,500. The Ohio Supreme Court in *James, supra*, upheld the setoff by stating in syllabus two as follows:

"*An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limit of its underinsured motorist coverage,* so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist." (Emphasis added.)

The conditions set by the court in *James* are satisfied in the case *sub judice*.

Appellants' policy contains the

---

[3] R.C. 3937.181 provided in pertinent part:

"The benefits provided under underinsured motorist coverages shall be subject to the same provisions as to denial of coverage, insolvency, subrogation or off-set as provided in uninsured motorist coverage under divisions (B), (C) and (D) of section 3937.18 of the Revised Code."

following language under the section entitled "Limit of Liability" of underinsurance motorist coverage:

"We will pay damages which a covered person is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by a covered person and caused by an accident.

"We will pay under this coverage only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

*"The limit of liability shown in the schedule for this coverage is our maximum limit of liability for all damages resulting from any one accident.*

"This is the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the declarations, or vehicles involved in the auto accident. *However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible."* (Emphasis added.)

In discussing virtually identical language in Billy James' policy, the court in *James* stated at 389-390:

"* * * Even under a construction most favorable to the insured, this provision is clear and unambiguous, and we would be altering the plain terms of [Billy James'] insurance policy if we were to limit the application of the setoff described herein only to instances where the insured has been fully compensated for all of his injuries. See *Gomolka* v. *State Auto. Mut. Ins. Co.* [(1982), 70 Ohio St. 2d 166 (24 O.O.3d 274)], at 168; *cf. Gomolka* v. *State Auto. Mut. Ins. Co.* (1984), 15 Ohio St. 3d 27, 29-30 (a provision that did not *clearly* provide for setoff against the limit of uninsured/underinsured motorist coverage, when construed in favor of insured, did not entitle insurer to such setoff)." (Emphasis *sic.*)

Thus, *James* leaves no doubt the principle of setoffs is authorized if the policy language clearly provides for the imposition of the setoff.

The second requirement of *James* concerns the manner in which the setoff is applied. *James* clearly directs that the application of the setoff may not lead to a result "wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist." *Id.* at paragraph two of the syllabus. For example, in *James* the insured received $12,500 from his underinsurance coverage and $12,500 from the tortfeasor which equalled the $25,000 limit of the uninsurance coverage of the insured's policy.

Again to quote paragraph two of the syllabus in *James* which states as follows:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) *does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."* (Emphasis added.)

The language in *James* is interesting from the viewpoint the Supreme Court states the insured should receive no less than he would have received if he had been injured by an uninsured motorist. The Supreme Court chose the phrase "less than" instead of the phrase "more than" in limiting compensation to the insured in *James, supra,* thereby leaving the door open when multiple insureds are involved.

*James* dealt with a single insured. In the case *sub judice,* multiple insureds

have presented claims under their underinsurance coverage; thus, this court must determine the manner in which the setoff is to be applied.

Applying the principle of *James* to multiple insureds requires State Auto to apply the setoff in a way which allows each insured to receive a total amount of compensation that is *no less than the amount of compensation he would have received if he had been injured by an uninsured motorist, viz.,* the $35,000 uninsured policy limit, while at the same time ensuring that the total amounts paid by State Auto do not exceed the $35,000 underinsurance policy limits clearly set forth in the policy. Appellants' policy, former R.C. 3937.181 (now R.C. 3937.18), the trial court's holding, and the Supreme Court's holding in *James, supra,* are consistent with the theory of *separate* and *suc-*

*cessive* treatment of the individual insureds as long as the total amounts paid to appellants collectively do not exceed the limits of their underinsurance coverage.

Applying the theory of *James* to the case *sub judice, e.g.,* assume three individuals are riding in a car struck by an individual with liability limits of $12,500 per person, $25,000 per accident. Further assume these three individuals have underinsurance coverage with a limit of liability of $35,000 per accident. The following illustration depicts a method of calculating the setoffs paid by the tortfeasor which allows each insured to receive compensation up to the underinsurance policy limits without exceeding the limits of liability of the underinsurance coverage (each number represents $1,000):

|  | Underinsured Policy | | Tortfeasor's Payment | | Balance in Underinsured Policy |
|---|---|---|---|---|---|
| A) | 35.0 | minus | 12.5 | = | 22.5 |
| B) | 22.5 | minus | -0- | = | 22.5 |
| C) | 22.5 | minus | 12.5 | = | 10.0 |

\* \* \*

| Claimant's Damages | | Tortfeasor's Payment | | Payment to Claimant from Underinsured Policy |
|---|---|---|---|---|
| 17.0 | minus | 12.5 | = | 4.5 |
| 8.0 | minus | -0- | = | 8.0 |
| 25.0 | minus | 12.5 | = | 12.5 |
| | | 25.0 | | 25.0 |

The underinsurance policy limits are not exhausted; there remains a balance of $10,000 in the underinsurance policy after all the claims have been paid. More importantly when multiple insureds are involved, each insured as a consumer purchasing protection against losses arising from collisions with underinsured tortfeasors actually receives the full benefit of his contract or policy with the insurance company; *i.e.,* each in-

sured receives compensation for his injuries up to the limits of the coverage he purchased. Under State Auto's interpretation of the setoffs, each consumer/insured would receive substantially less than the amount of coverage actually bargained for and purchased under the policy.

The foregoing is merely an illustrative example. A different example could involve claimant "C" collecting the total

$25,000 payment from the tortfeasor; claimants "A" and "B" would then receive payments under their underinsurance coverage.

In support of their contention, appellants point to language in several opinions of the Ohio Supreme Court and used most recently in *Auto-Owners Mut. Ins. Co.* v. *Lewis* (1984), 10 Ohio St. 3d 156, 158:

" ' "* * * [Uninsured motorist] coverage protects against loss due to bodily injuries or death by another who is at fault. *It should ordinarily attach to an insured, not to a vehicle." ' Ady, supra* [*Ady* v. *West American Ins. Co.* (1982), 69 Ohio St. 2d 593 (23 O.O.3d 495)], at 596; * * *" (Emphasis added.)

While this language is not controlling in the case *sub judice,* it is persuasive. A corollary of the above-quoted language is underinsurance attaches to individuals not to accidents.

Therefore, under the principles set forth in *James,* State Auto may set off payments made to the appellants by the tortfeasor but it must deal with each insured separately and successively so that each insured receives no less than the compensation he would have received had he been injured by an uninsured tortfeasor, but the total sums paid by State Auto must not exceed the $35,000 limits of underinsurance coverage.

Therefore, we are in agreement with the trial court's holding as set out as follows:

"[Appellants] are to receive from [State Auto] the underinsured policy limit of $35,000.00 less the amount received from Dairyland Insurance Company, defendant Laura J. Parson's [*sic*] insurer."

Thus, the trial court's holding is affirmed as modified in accord with the reasoning hereinabove stated.

*Judgment accordingly.*

MARKUS, J., concurs.

PRYATEL, J., concurs in part and dissents in part.

PRYATEL, J., concurring in part and dissenting in part. I concur with the majority holding that " '[Appellants] are to receive from [State Auto] the underinsured policy limit of $35,000 less the amount received from Dairyland Insurance Company, defendant Laura J. Parson's [*sic*] insurer.' "

While my hope is that the breakdown of payment — as apportioned by the majority will be upheld — I believe that the provision of the policy, to wit, "[h]owever, the limit of liability [$35,000] shall be reduced by *all* sums paid [$25,000] because of the bodily injury by or on behalf of persons or organizations who may be legally responsible" requires State Auto to pay $10,000.

I would affirm without modification.