DERR, EXR., APPELLANT, *v.* WESTFIELD COMPANIES ET AL., APPELLEES.

[Cite as *Derr v. Westfield Cos.* (1992), 63 Ohio St.3d 537.]

(No. 90–2307—Submitted November 12, 1991—Decided May 6, 1992.)

538

*Scanlon & Gearinger Co., L.P.A., Timothy F. Scanlon* and *Suzanne C. Porter,* for appellant.

*Davis & Young Co., L.P.A., George J. Lutjen* and *Martin J. Murphy,* for appellees.

SWEENEY, J.  The issue certified by the court of appeals below is "[w]hether an insurer on a single-limit underinsured motorist policy may set off against that single limit of liability the total amount paid by a tortfeasor's insurance, when the claims of each of the claimants taken individually do not reach that limit as reduced by the amount paid to each claimant by the tortfeasor."  For the reasons that follow, we hold that the courts below improperly applied the setoff the insurer was entitled to take and, therefore, we reverse and remand the decision rendered below.

While the instant cause seeks a determination of the proper method by which an insurer may set off amounts the insured receives from other sources with regard to a particular claim, our determination in the case *sub judice* hinges upon the important fact that this action involves wrongful death claims for which Ohio statutory law has accorded special treatment.  As this court held in the syllabus of *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089:

"Each person entitled to recover damages pursuant to R.C. 2125.02 for wrongful death, and who is an insured under an underinsured motorist provision in an insurance policy, has a separate claim and such separate claims may not be made subject to the single person limit of liability in the

underinsured motorist provision. (R.C. 2125.02 and 3937.18[A][2], construed and applied.)"

As correctly noted by Judge William R. Baird in his dissenting opinion in the court of appeals below, one of the primary thrusts of the law enunciated in *Wood, supra,* is that the claims of each next-of-kin in a wrongful death situation are separate and distinct.

In addition, this court has had the opportunity to discuss an insurer's right to set off amounts that an insured receives from the tortfeasor when the insured makes a claim for underinsured motorist coverage. In *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272, we held in the second paragraph of the syllabus:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

In the instant case, the trial court relied on *James* in reducing Westfield's liability to Derr and his two children by setting off the $100,000 received from the tortfeasor's insurer in settlement of the wrongful death claims from the $400,000 limit of the policy. Nevertheless, the instant cause presents a different fact pattern from the situation found in *James.* Here, we are faced with multiple claimants and a single limit policy wherein the per person limit of liability is the same as the per accident limit. *James,* however, involved a single claimant asserting an underinsured motorist claim against a split-limit policy which imposed a smaller "per person" limit than the larger "per accident" amount that the insurer promised to pay for all claims arising out of a particular accident.

Here, the single limit policy provides in relevant part:

"**COVERAGE J—Underinsured Motorists**

"The limit of liability shown in the Declarations for Coverage J is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

"a.   Insureds;

"b.   claims made;

"c.   vehicles or premiums shown in the Declarations; or

"d.   vehicles involved in the accident.

"However, the limit of liability shall be reduced by all sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible.  * * * "

As mentioned before, three separate claims have been lodged requesting damages for the wrongful death of Diana Derr.  In addition, there is no dispute that the three claimants are "insureds" under the foregoing underinsured motorist provision.  How then, the question arises, may Westfield effectuate its setoff rights, given the foregoing policy language and the law enunciated in both *Wood, supra,* and *James, supra?*  While *James* does not address the issue of how to apply a setoff where there are multiple claimants against a single limit policy, the *James* opinion does provide us with the starting point for calculating the setoff, *i.e.,* that the setoff should be deducted from the per person limit of an underinsured policy.[1]  Since we are dealing with a single limit policy, the per person limit is the same as the per accident limit, which in this case is $400,000.  Given the fact that there are three wrongful death claimants or "insureds," we believe that each "insured" under the policy may seek up to $400,000 for damages.  However, because the single limit policy has the same per person/per accident dollar limitation, Westfield will never have to pay more than the $400,000 limit for any one accident.

In our view, the trial court below ignored the aspect of the separateness of wrongful death claims as explained in *Wood, supra,* and it perfunctorily applied *James, supra,* by subtracting the amount received from the tortfeasors' insurer ($100,000) from the total liability cap under the single claim policy ($400,000).  In so doing, the court declared that Westfield is liable to pay only $300,000 under the policy.  While the court of appeals majority endorsed this approach, we believe that the law and the policy language dictate a different method of calculating Westfield's setoff rights.

The approach we endorse herein is similar to that implemented by the Cuyahoga County Court of Appeals in *Zelko v. Parsons* (1985), 29 Ohio App.3d 302, 29 OBR 400, 505 N.E.2d 271.  In *Zelko,* the appellate court held that the insurer must consider all claims separately and may not simply apply a collective setoff against the total limit of underinsured motorist coverage.  In addition, the setoff language used in the instant policy is not clear and unambiguous as to the manner in which the setoff is to be effectuated,

---

1.  As noted in the dissent below, it can be safely assumed that the insurer would not argue for effectuating the setoff against the overall policy limit if the Derrs had a split-limit policy such as $100,000/$400,000.  In that situation, the insurer would argue for dividing the $100,000 setoff among the claimants and the insurer would very likely offer less than the $300,000 that it concedes is owed to the claimants.

especially with respect to the situation where multiple insureds present claims for underinsured motorist coverage. As this court has often stated, "[l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." *Faruque v. Provident Life & Acc. Ins. Co.* (1987), 31 Ohio St.3d 34, 31 OBR 83, 508 N.E.2d 949, syllabus. Thus, given the ambiguous setoff language in the subject policy, we will construe the language liberally in favor of the insureds and strictly against the insurer.

Based solely on the stipulation of the parties that the probate court divided the net recovery of the tortfeasors' insurance equally among the three wrongful death claimants, we will assume for the sake of calculating Westfield's setoff that the damage sustained by each claimant is equal. Given that the arbitrators determined that the wrongful death claimants sustained $800,000 in damages, the calculation of the setoff should be as follows (amounts are in thousands of dollars):

|  | Claim | Paid | | Unsatisfied Claim | Policy Limit | Setoff | | Adjusted Limit |
|---|---|---|---|---|---|---|---|---|
| Edgar : | $266.6 | − $ 33.3 | = | $233.3 | $400 | − $ 33.3 | = | $366.6 |
| Michael : | $266.6 | − $ 33.3 | = | $233.3 | $400 | − $ 33.3 | = | $366.6 |
| Julie : | $266.6 | − $ 33.3 | = | $233.3 | $400 | − $ 33.3 | = | $366.6 |
| Total : | $800 | − $100 | = | $700 | | $100 | | |

Since each adjusted limit is still greater than each claimant's unsatisfied claim, the claims are limited only by the overall limit per accident, $400,000. Each claimant therefore takes his or her proportional share (under our assumption, an equal share) of the $400,000 limit, *i.e.*, $133,333.3.

Under the foregoing calculation, Westfield will pay no more than the $400,000 single policy limit, and the setoff is effectuated by deducting it from the policy limit as applied to each claim. While it is true that each individual insured in this case receives more in compensation than he or she would have received under the uninsured motorist provision of the subject policy, as opposed to the underinsured motorist provision at issue, that does not run afoul of our prior holding in *James, supra*, or public policy. As aptly explained by Judge Blanche Krupansky in *Zelko, supra:*

"The language in *James* is interesting from the viewpoint the Supreme Court states the insured should receive no less than he would have received if he had been injured by an uninsured motorist. The Supreme Court chose the phrase 'less than' instead of the phrase 'more than' in limiting compensation to the insured in *James, supra*, thereby leaving the door open when multiple insureds are involved." *Id.* at 304, 29 OBR at 403, 505 N.E.2d at 274.

In calculating the setoff as outlined above, the insured receives no less than what was bargained for in the contract of insurance and the insurer Westfield has the potential benefit of effectuating a setoff for amounts the insureds received from other sources, but pays no more than what it agreed to pay under the insurance contract. In our view, this approach is most consonant with the policy goals delineated in both *Wood, supra,* and *James, supra.*

One other aspect of our decision today should be addressed, as cogently analyzed by Judge Baird in his dissenting opinion below:

"Finally, the point should be made that the concept of separate treatment of individual claims does not necessarily result in the insurance company always paying its maximum policy limits. We have no way of knowing in this case how the $800,000 total damages is to be allocated among the three claimants. If it is to be allocated equally, it is true that the insurance company ends up paying a total of $400,000. On the other hand, if one claim is to be allocated $750,000 and other two $25,000 each, the insurance company would pay only $366,333 [*sic*, $366,666]. This is so because the $750,000 claimant would collect only the policy limit applicable to his claim ($400,000 minus the $33,333 setoff applicable to that claim) and the other two claimants could collect nothing because they had already collected more than their damages."

Based on all the foregoing, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings in accordance with this opinion.

*Judgment reversed*
*and cause remanded.*

DOUGLAS, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. The process of this court's annihilation of insurance policy language as demonstrated in *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, continues here.[2] It is clear from this opinion that henceforth in Ohio, contracts of insurance, particularly their limits of recovery, will mean

2. Continued reliance on *Wood v. Shepard* (1988), 38 Ohio St.3d 86, 526 N.E.2d 1089, is misplaced, given our recent pronouncements in *State Farm Auto. Ins. Co. v. Rose* (1991), 61 Ohio St.3d 528, 575 N.E.2d 459 (limiting *Wood*'s applicability to cases where the insurer's contract is ambiguous as to separate claims and policy limits), and *Hill v. Allstate Ins. Co.* (1990), 50 Ohio St.3d 243, 553 N.E.2d 658 (distinguishing *Wood* and holding that separate wrongful death claims do not exist where the insured's policy limits are identical to a tortfeasor's liability insurance coverage, since separate claims are cognizable only to the extent the insured's single limit of coverage would permit them).

only what this court wishes them to mean, notwithstanding what the parties have agreed to.

The basic principle and legislative purpose of uninsured/underinsured motorist coverage were set forth in *Bartlett v. Nationwide Mut. Ins. Co.* (1973), 33 Ohio St.2d 50, 52, 62 O.O.2d 406, 408, 294 N.E.2d 665, 666, quoted favorably in *Sexton v. State Farm Mut. Auto. Ins. Co.* (1982), 69 Ohio St.2d 431, 436, 23 O.O.3d 385, 388, 433 N.E.2d 555, 559:

" * * * [T]he legislative purpose in creating compulsory uninsured motorist coverage was to place the injured policyholder in the same position, with regard to the recovery of damages, that he would have been in if the tortfeasor had possessed liability insurance."

The purpose of the uninsured motorist law had been carried out here when the appellant was paid a total of $400,000. It cannot reasonably be argued that the Derrs individually or collectively could have recovered more than $400,000 from the tortfeasors' insurer if the tortfeasors had been covered by a liability insurance policy with a single limit of $400,000, as contained in the Westfield policy.

The purposes of R.C. 3937.18 have been properly met here in that the Derrs, individually and in the aggregate, received what they would have received if the tortfeasors had been insured in the amount selected by the Derrs in their policy. Also, the Derrs received what they would have received if the tortfeasors had been uninsured.

Specifically as to the setoff required by this policy, the language of the setoff is clear and unambiguous, and such a setoff is clearly authorized by statute and pronouncements from this court. In *James v. Michigan Mut. Ins. Co.* (1985), 18 Ohio St.3d 386, 18 OBR 440, 481 N.E.2d 272, we set forth at paragraph two of the syllabus:

"An insurer may apply payments made by or on behalf of an underinsured motorist as a setoff directly against the limits of its underinsured motorist coverage, so long as such setoff (1) is clearly set forth in the terms of the underinsured motorist coverage and (2) does not lead to a result wherein the insured receives a total amount of compensation that is less than the amount of compensation that he would have received if he had been injured by an uninsured motorist."

Applying the law enunciated in *James* here, it is apparent that the setoff provision in the Westfield policy is unambiguously set forth and provides as follows:

"However, the limit of liability shall be reduced by all sums paid because of the **bodily injury** by or on behalf of persons or organizations who may be legally responsible.   * * * "

This court in construing a similar setoff provision in *James* stated:

" * * * The setoff provision set forth in the endorsement to the appellee's insurance policy states that the *'limit of liability shall be reduced* by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.' (Emphasis added.)   Even under a construction most favorable to the insured, *this provision is clear and unambiguous* [emphasis added], and we would be altering the plain terms of the appellee's insurance policy if we were to limit the application of the setoff described herein only to instances where the insured has been fully compensated for all of his injuries.   * * * "   *Id.,* 18 Ohio St.3d at 389, 18 OBR at 443, 481 N.E.2d at 275.

The same law announced in *James* should apply here, even though the instant policy is a single limit rather than a split-limit policy.  The law in Ohio is clear that the setoff is to be applied not to the insured's total damages, but rather to the insurer's policy limit.  With respect to the right to setoff by the insurer providing underinsured motorist coverage, R.C. 3937.18(A)(2) provides, in pertinent part:

" * * * The limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage [the insured's uninsured motorist coverage], less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured."

Accordingly, in my view the majority of the court of appeals correctly found that Westfield was entitled under the law and the specific terms of its insurance contract to set off all sums paid to the Derrs directly against the total policy limits for which the Derrs contracted.  The total policy limit in this case was $400,000 and the total sum paid by American was $100,000, leaving Westfield with a total liability of $300,000, which it satisfied.

Thus, I would affirm the judgment of the court of appeals.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.