KING et al., Appellees,

v.

**WESTERN RESERVE GROUP, Appellant.**

[Cite as *King v. W. Res. Group* (1997), 125 Ohio App.3d 1.]

Court of Appeals of Ohio,
Seventh District, Monroe County.

No. 789.

Decided Dec. 1, 1997.

2

*James W. Peters,* for appellees.

*Douglas N. Godshall, Heather E. Ewashinka* and *Thomas Himmelspach,* for appellant.

---

GENE DONOFRIO, Presiding Judge.

Western Reserve Group, appellant, appeals the order of the Monroe County Court of Common Pleas granting summary judgment in a declaratory judgment action in favor of appellees, Betty King, Clyde King, Joanie King, and the estate of Melania King, pertaining to the issue of underinsured motorist coverage.

Betty King and Clyde King were the parents of five children, Joanie, Stephen, Michael, Clayton, and Melania. Melania and Joanie resided with their parents, while the three brothers lived outside the household. The parents, Betty and Clyde, along with Melania and Joanie were all named insureds on an insurance policy issued by Lightning Rod Mutual Insurance Company, a subsidiary of appellant, Western Reserve Group. The policy provided for uninsured motorist coverage in the amount of $100,000 per person and $300,000 per accident.

On November 9, 1995, Melania King was killed in an automobile accident while riding as a passenger in a vehicle driven by Amy Conley. Conley was insured by the Horace Mann Insurance Company under a policy with a liability limit of

$300,000 per accident. Because various other individuals were passengers in Conley's car at the time of the accident, Horace Mann instituted an interpleader action in the Circuit Court of Brooke County, West Virginia, joining as one of the defendants Betty King in her capacity as administrator of Melania's estate. On March 27, 1997, Betty King, as administrator of the estate of Melania King, filed an application in the Monroe County Probate Court for approval of the proposed wrongful death settlement in the Brooke County case. As a result of the agreed division of the Horace Mann liability policy, the estate of Melania King received $62,500. The Monroe County Probate Court approved the settlement, and after payment of expenses, the remainder of the $62,500 was distributed to Stephen King, Michael King, and Clayton King, all brothers of the deceased. None of the proceeds were paid to Clyde King, Betty King, or Joanie King, although all had consented to the distribution.

Following the settlement, appellees sought to recover underinsured motorist benefits under the Lightning Rod policy. On June 4, 1996, Lighting Rod offered to pay $37,500 to the estate of Melania King, which represented the $100,000 per-person limit of the policy, less a setoff of the $62,500 paid by Horace Mann on behalf of Conley. Appellees then instituted a declaratory judgment action seeking a determination that each appellee had a separate claim, that such claims were collectively subject to the per-person limit of the policy, and that appellant was not entitled to offset any amounts paid by Horace Mann to claimants other than appellees.

On December 12, 1996, the trial court ruled that appellees had four separate claims, each subject to a $100,000 limit, but limited to a total recovery of $100,000 collectively. The trial court also found that appellant was not entitled to set off against its policy limits any amounts not actually received by appellees. From that order, appellant brings three assignments of error. Because we believe it is a predicate to the resolution of the others, we will first consider appellant's second assignment of error, which states:

"The uninsured-motorist provision of the Lightning Rod policy defined an insured as anyone legally entitled to recover damages for bodily injury, including death, sustained by the family member of the named insured as a result of an accident caused by an underinsured motorist. Were the brothers of Melania King legally entitled to recover as beneficiaries in an action against the tortfeasor for [the] wrongful death of Melania King?"

We construe this assignment as claiming as error on the part of the trial court its determination that the three older brothers of the decedent were not "insureds" within the underinsured motorist coverage provisions of the Lightning Rod policy. This determination is implicit in the trial court's ruling that "none of the insureds under King's Policy [with Lightning Rod] were paid any portion of

the monies received from the tortfeasor." Clearly, if Stephen, Michael, and Clayton King were insureds under the policy, this ruling would be error.

A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. See Civ.R. 57 and R.C. 2721.01 *et seq.* Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. See *Lessak v. Metropolitan Cas. Ins. Co. of N.Y.* (1958), 168 Ohio St. 153, 155, 5 O.O.2d 442, 443–444, 151 N.E.2d 730, 732–733. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is *de novo.* Hence, summary judgment is proper when:

"* * * (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Welco Industries, Inc. v. Applied Cos.* (1993), 67 Ohio St.3d 344, 346, 617 N.E.2d 1129, 1132.

The Lightning Rod policy issued to appellees provides for uninsured motorist coverage in Part C, which states as follows:

*"INSURING AGREEMENT*

"A. We will pay compensatory damages which an 'insured' is legally entitled to recover from the owner or operator of an 'uninsured motor vehicle' because of 'bodily injury':[1]

"1. Sustained by an 'insured;' and

"2. Caused by an accident.

"* * *

"B. 'Insured' as used in this Part means:

"1. You or any 'family member.'[2]

"2. Any other person 'occupying' 'your covered auto.'

---

1. In the policy definitions, "bodily injury" is defined as "bodily harm, sickness or disease, including death that results."

2. "Family member" is defined as a person related to the named insured by blood, marriage or adoption who is a resident of the named insured's household.

"3. Any person for damages that person is entitled to recover because of 'bodily injury' to which this coverage applies sustained by a person described in 1. or 2. above." (Footnotes added.)

■ Appellees stress that the issue of whether the three adult brothers are insureds under the Lightning Rod policy was not raised at the trial court, presumably implying that we should not reach the issue. However, inasmuch as the trial court was cognizant of the three brothers, but nonetheless ruled that none of the insureds under the policy received any of the money from Conley's insurer, we believe the issue was considered by the trial court in reaching its ultimate disposition of the case. Because this determination raises a pure question of law, insofar as it represents the trial court's declaration of rights and obligations arising under the policy, our review is plenary. See *Lewis v. Motorists Ins. Co.* (1994), 96 Ohio App.3d 575, 582, 645 N.E.2d 784, 788–789.

Appellant argues that because Melania King was a "family member" under B.1., and because the three adult brothers were legally entitled to recover damages for the death of Melania as wrongful death beneficiaries, they are therefore insureds within the terms of the Lightning Rod policy. In response, appellees argue that because the three brothers were not residents of the named insureds' household, they are not family members under the policy, and are therefore not insureds under the policy.

Appellees are correct in asserting that the three adult brothers are not family members as defined in the policy, inasmuch as they did not reside in the King household. However, the policy itself provides three separate avenues to achieving the status of insured, of which the "you or any family member" clause is only one. Appellees apparently ignore the effect of B.3., which in essence extends the policy's coverage beyond the named insureds and family members, and beyond those persons occupying the covered auto, to any person who would be entitled to recover damages against a tortfeasor because of bodily injury, including death, that occurs to any family member of the named insureds. Because Melania King, the decedent, was a named insured, as well as a family member of the named insureds Clyde and Betty King, so long as a person is "entitled to recover" damages for the death of Melania King, that person would be an insured within the meaning of the policy.

Hence, whether or not the three adult brothers were insureds under the terms of the policy turns on whether they were entitled to recover damages for Melania's death. We believe this question is disposed of by reference to the Ohio Wrongful Death Statute.

R.C. 2125.01 provides:

"When the death of a person is caused by wrongful act, neglect, or default which would have entitled the party injured to maintain an action and recover damages if death had not ensued, the person who would have been liable if death had not ensued * * * shall be liable to an action for damages, notwithstanding the death of the person injured * * *."

R.C. 2125.02 governs the procedural aspects of the action and provides:

"(A)(1) Except as provided in this division, an action for wrongful death shall be brought in the name of the personal representative of the decedent for the exclusive benefit of the surviving spouse, the children, and the parents of the decedent, all of whom are rebuttably presumed to have suffered damages by reason of the wrongful death, and for the exclusive benefit of the *other next of kin* of the decedent."   (Emphasis added.)

Clearly, Michael, Clayton, and Stephen King, the three adult brothers, as "next of kin" of the decedent are named as potential beneficiaries under the wrongful death statute. The fact that the brothers are not rebuttably presumed to have suffered damages does not affect their status as potential beneficiaries. As the Eleventh District Court of Appeals recently stated in *Miller v. Allstate Ins. Co.* (1996), 111 Ohio App.3d 575, 579, 676 N.E.2d 943, 946:

"[E]ven a cursory reading of R.C. 2125.02(A)(1) reveals that 'other next of kin of the decedent' also may sue for the loss of their relative, although they do not receive the benefit of the rebuttable presumption that they, in fact, are legally damaged by the wrongful death."

In *Miller,* the appellant insurance carrier claimed that the appellee could not recover for her sister's wrongful death because she was not presumed to have suffered damages under the wrongful death statute. Rejecting this argument, the court ruled:

"* * * Appellee, as the decedent's sister, may sue for wrongful death pursuant to R.C. 2125.02(A)(1);  however, she must prove her damages and no presumption obtains that she suffered damages as a result of her sister's death." *Id.*

This reasoning is applicable to the present case. Although the three adult brothers must prove the extent to which they have suffered damage from the death of their sister, this has no bearing on their status as insureds pursuant to the terms of the Lightning Rod policy. Because the three adult brothers of Melania King are insureds within the meaning of the Lightning Rod policy, it was error for the trial court to rule otherwise.

We note that even if we had not construed the policy language to include the three brothers as insureds, the recent Ohio Supreme Court decision in *Holt v. Grange Mut. Cas. Co.* (1997), 79 Ohio St.3d 401, 683 N.E.2d 1080, would nonetheless require the same result. In declaring invalid an attempt by an

provider of underinsured motorist insurance to exclude coverage to statutory beneficiaries not insured within the policy language, the Supreme Court noted:

"It is absurd to prevent recovery for a wrongful death beneficiary by excluding him or her from the status of an 'insured' when R.C. Chapter 2125 expressly recognizes that he or she has suffered damages due to the wrongful death." *Id.* at 408, 683 N.E.2d at 1086.

Hence, even if the policy language excluded the three brothers, to the extent that they are statutory wrongful death beneficiaries, that exclusion would be invalid as a matter of law.

Appellant's second assignment of error has merit.

We turn next to appellant's first assignment of error, which states:

"Under R.C. 3937.18(A)(2), the available limits of underinsured motorist coverage are to be reduced 'by those amounts available for payment under all applicable bodily injury * * * insurance policies covering persons liable to the insured.' When a tortfeasor's liability insurer pays a portion of its liability coverage limits to the administratrix of the estate of a person who died as a result of the tortfeasor's negligence, is that money 'available for payment' to the natural parents and sister of the decedent for purposes of the set-off described in R.C. 3937.18(A)(2), whether or not those individuals waive their right to share in the liability coverage distribution?"

We summarize appellant's assignment as presenting the following issue: Was the $62,500 received by the estate of Melania King "available for payment" to appellees so as to permit Lightning Rod to offset that amount from its obligations as statutorily provided for in R.C. 3937.18(A)(2)? For the following reasons, we believe that it was.

Appellant argues that R.C. 3937.18(A)(2) is clear and unambiguous inasmuch as it requires that "available for payment" refer to amounts actually accessible to the insured and that the statute does not require the amounts in question to be actually paid to the insureds. According to appellant, the fact that the named plaintiffs in this case elected to receive none of the proceeds from the tortfeasor's insurer does not mean that the amount received by the estate was not "available for payment" for purposes of R.C. 3937.18(A)(2).

Appellees respond that the "available for payment" language can only mean available for payment to the insureds, and that because none of the insureds under the Lightning Rod policy received any of the proceeds the $62,500 may not be set off from Lightning Rod's obligations under the policy.

R.C. 3937.18(A)(2), as amended by Am.Sub. S.B. No. 20 ("Senate Bill 20"), effective October 20, 1994, states:

"Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for an insured against loss for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." [3]

We note that the "available for payment" language was introduced by Senate Bill 20 and that in the pre-amended version of the statute, the setoff provision allowed the insurer to deduct "those amounts actually recovered." Hence, the General Assembly has expressed its intent to expand the benefits to an insurer under the setoff provision to amounts available to, but not necessarily recovered by, an insured.

In this case, both parties appear to agree with the trial court's ruling that "available for payment" as used in R.C. 3937.18(A)(2) can only mean available for payment to the insureds. In this respect we agree, it making little sense to permit an insurer to offset from its obligations amounts that a tortfeasor's carrier happens to have paid to injured parties other than the insureds. Indeed, the trial court cogently remarked that if Lightning Rod could deduct payments made to claimants other than the insureds, then under certain circumstances the insureds would receive nothing from their underinsured motorist coverage and nothing from the tortfeasor.

Because neither party asserts that "available for payment" refers to anyone other than the insureds, we believe the real issue raised by this assignment is whether the $62,500 was actually available to the insureds. This is the reason we elected to treat appellant's second assignment of error first, wherein we determined that the three adult brothers of Melania King were insureds under the Lightning Rod underinsured motorist coverage provisions. Because the $62,500

---

3.   This amended version of the statute is applicable herein because the cause of action accrued after October 20, 1994. See *Cole v. Holland* (1996), 76 Ohio St.3d 220, 225, 667 N.E.2d 353, 356–357.

was received by the estate of Melania King, a named insured under the policy, and because the proceeds from Conley's insurer were distributed and actually recovered by the three adult brothers of the decedent, also insureds under the policy, it follows that the $62,500 was "available for payment" for purposes of R.C. 3937.18(A)(2). The settlement agreement approved by the probate court indicates that all of the beneficiaries, both plaintiffs and nonplaintiffs, consented to the distributions contained therein. The fact that appellees in this case chose not to share in the proceeds should not operate to increase the obligation of Lightning Rod under the provisions of its policy.

The trial court ruled that none of the insureds under the Lightning Rod policy received any portion of the monies received from the tortfeasor. As we have already noted, this conclusion was error. The three adult brothers of Melania King were insureds under the underinsured motorist provisions of the Lightning Rod policy and did in fact receive a portion of the settlement from the tortfeasor's carrier. Hence, because the $62,500 paid by the tortfeasor's carrier to the estate of the decedent was "available for payment" to the insureds, and was in fact received by the three insured brothers, Lightning Rod is entitled to a setoff. The trial court having ruled otherwise, appellant's first assignment of error is also with merit.

Appellant's third assignment of error states:

"Under R.C. 3937.18(A)(2), underinsured motorist coverage is not excess insurance, but is provided to give the insured a measure of protection no greater than he would have if the tortfeasor was uninsured. Did the trial court err in ruling that the insureds in this case were entitled to recover collectively $162,000 from the tortfeasor's liability carrier and from their underinsured motorist carrier, when they would have recovered only $100,000 in coverage if the tortfeasor was uninsured?"

The essence of this assignment is that by refusing to permit Lightning Rod to apply the setoff, appellees will be overcompensated beyond that which was anticipated in the insurance contract. Although the trial court did not permit Lightning Rod to offset the $62,500 paid by Conley's carrier, and so did not rule on the manner in which the setoff is to be applied, we believe that in order to adequately treat the issue raised by appellant we must discuss the application of the setoff under the facts of the case before us.

The Ohio Supreme Court has previously noted that R.C. 2125.02 accords special treatment to wrongful death claims in Ohio and that the claims of each next of kin who is an insured under an underinsured motorist provision in an insurance policy are considered separate and distinct. See *Holt*, 79 Ohio St.3d at 405, 683 N.E.2d at 1084, fn. 2. In *Derr v. Westfield Cos.* (1992), 63 Ohio St.3d 537,

539–540, 589 N.E.2d 1278, 1280–1281, the Ohio Supreme Court clarified the manner in which setoffs are to be applied in a situation where multiple claimants bring wrongful death claims under an insurance policy. The decedent's husband in *Derr*, as the executor of the decedent's estate, filed a wrongful death claim on behalf of himself and his two minor children. The tortfeasor's insurer paid $100,000, its policy limit, in settlement of the claim, which was distributed in equal shares to the three beneficiaries. The husband then sought payment from his underinsured motorist coverage insurer up to its single limit of $400,000. In deciding whether the insurer was entitled to offset the $100,000 paid by the tortfeasor's carrier, the Supreme Court ruled that because there were three wrongful death claimants, or insureds, each insured could seek damages up to the policy limit. However, endorsing the approach outlined by the Eighth District Court of Appeals in *Zelko v. Parsons* (1985), 29 Ohio App.3d 302, 29 OBR 400, 505 N.E.2d 271, the Supreme Court also ruled:

"The insurer must consider all claims separately and may not simply apply a collective setoff against the total limit of underinsured motorist coverage." *Derr*, at 541, 589 N.E.2d at 1282.

The court then assumed that the damages suffered by each claimant were equal, and divided the setoff equally among the three claimants before applying the policy limit.

The facts of the present case differ in a number of respects from those in *Derr*, but we do not believe any of the factual differences require a departure from the point enunciated in *Derr* that insurers must apply setoffs to the separate and distinct claims involved, as opposed to the collective limit applicable to all claims. The task we are faced with is the application of the *Derr* ruling in a case where the original wrongful death plaintiffs and the claimants under an underinsured motorist coverage are not one and the same group.

The Supreme Court in *Derr* did not consider the estate of the decedent to have a separate claim under the insurance policy. This entirely comports with the language of R.C. 2125.02 and with prior judicial pronouncements concerning wrongful death actions. Simply put, the estate of a decedent is not a statutory beneficiary of a wrongful death action. In a wrongful death action "the personal representative [of the decedent's estate] is merely a nominal party and the statutory beneficiaries are the real parties in interest." *Burwell v. Maynard* (1970), 21 Ohio St.2d 108, 110, 50 O.O.2d 268, 269, 255 N.E.2d 628, 629; see, also, *Kyes v. Pennsylvania R. Co.* (1952), 158 Ohio St. 362, 49 O.O. 239, 109 N.E.2d 503. An action for the benefit of the decedent's estate is a survival action, seeking damages for injury prior to death. See *Mahoning Valley Ry. Co. v. Van Alstine* (1908), 77 Ohio St. 395, 83 N.E. 601; John W. McCormac, Wrongful Death in Ohio (1982) 7. Because no such action has been alleged, to the extent

that the trial court ruled that appellees had four separate claims, as opposed to the three claims of the named plaintiff beneficiaries, the ruling was error.

This position is supported by the Supreme Court's recent treatment of the interplay between R.C. 2125 and underinsured motorist coverage in *Holt, supra*. In *Holt*, the Supreme Court recognized separate claims for the decedent's wife and their two sons. The decedent's estate did not have a separate claim distinct from these three, but, rather, "[t]he personal representative is, conceptually, stepping into the shoes of the insured decedent, and is the conduit through which the beneficiaries ultimately recover damages." *Id.*, 79 Ohio St.3d at 407, 683 N.E.2d at 1085.

Inasmuch as the personal representative of the decedent "pursues the recovery the decedent cannot pursue," any recovery obtained is wrongful death proceeds. *Id.* The *Holt* court noted the distinction between this step in the process, receiving proceeds from the insured, and the subsequent step of dividing the proceeds recovered among the beneficiaries according to each beneficiary's personal right of recovery. The trial court's finding of four claims ignores this subtle but important distinction.

As we have already noted, the trial court did not rule on the manner in which the setoff is to be applied. Given the three wrongful death claims of appellees and our determination that Lightning Rod is entitled to setoff amounts available for payment to their insureds, it remains the task of the trial court to give effect to the setoff in a manner consistent with that outlined in *Derr*.

We remand this cause because we believe a factual issue exists as to how much of the $62,500 was "available for payment" to the three claimants Joanie, Clyde and Betty King. Although we have ruled that Lightning Rod need not absorb the costs of the claimants' election not to participate in the distribution of the $62,500, neither do we believe that the claimants should have their benefits under the policy reduced by amounts that rightly should have been available to non-claimants. The probate agreement says nothing more than how much was actually recovered by the various beneficiaries; it does not necessarily indicate how much was "available for payment" to each beneficiary for purposes of R.C. 3937.18(A)(2). We note that this distinction is reinforced by the change in the language of R.C. 3937.18(A)(2) wrought by Senate Bill 20 wherein "amounts actually recovered" is replaced by "amounts available for payment." Only once the trial court has determined the amount "available for payment" to each of the three claimants can it reduce each claim by the appropriate amount.[4]

---

4. It must be noted that pursuant to the terms of the insurance policy, the limit of liability shown for each person for uninsured motorist coverage is the maximum limit for the insurers' liability for all damages arising out of bodily injury sustained by any one person in one

The decision of the trial court is hereby reversed, and this matter is remanded in order to determine what portion of the $62,500 paid to the estate of Melania King was available for payment to the three named insureds, Joanie, Clyde and Betty King, for purposes of the setoff provision in R.C. 3937.18(A)(2). In the absence of circumstances not brought to our attention, we presume that this will be determined by dividing the $62,500 equally among the six statutory beneficiaries, although the trial court is free to take account of factors that would warrant a different result.

Both parties in the instant case have filed additional motions for our consideration, which we now dispose of. Because of our treatment of appellant's second assignment of error, appellees' motion regarding attorneys fees is overruled. Furthermore, because App.R. 16(C) vests this court with discretion to accept additional filings after the filing of appellant's reply brief, and because appellees' supplemental brief is helpful to our disposition of the case, appellant's motion to strike appellees' supplemental brief is also overruled.

*Judgment accordingly.*

VUKOVICH and WAITE, JJ., concur.

accident. Such a limit is permitted by amended R.C. 3937.18(H). Thus, although each insured has a separate claim, all claims collectively are subject to a $100,000 limit. The preceding was determined by the trial court in its December 12, 1996 opinion and journal entry.