OPINION
Plaintiffs-appellants, Elizabeth A. Catledge and Eddie T. Catledge, appeal an order of the Mahoning County Common Pleas Court granting summary judgment in a declaratory judgment action in favor of defendant-appellee, American Select Insurance Company, on the issue of the availability of underinsured motorist coverage.
On February 9, 1997, Andrea B. Catledge (Andrea) died as the result of injuries suffered in a motor vehicle accident in Kent, Ohio.[1] Andrea was operating a car owned by her father, plaintiff-appellant, Eddie T. Catledge. Andrea's passenger, Rebecca J. Berg (Berg), sustained personal injuries and survived. The negligence of Erik L. Williams (tortfeasor) was the direct and proximate cause of the accident.
At the time of the accident, appellants were named insureds under a policy issued by defendant-appellee, American Select Insurance Company. Since Andrea was operating a "covered auto" as defined by appellee's policy and Berg was a passenger in a "covered auto", both Andrea and Berg qualified as insureds under the underinsured motorist (UIM) coverage of the policy. The policy had a UIM single coverage limit of $300,000 per accident.
The tortfeasor was covered under an automobile insurance policy issued by Progressive Insurance Companies (Progressive) with policy limits of $12,500 per person and $25,000 per occurrence. Due to the comparative limits of coverage available under the tortfeasor's policy, the vehicle was an "underinsured motor vehicle" for purposes of appellee's policy. Progressive paid its policy limits to both appellants and Berg in the amount of $12,500 each.
Appellee subsequently paid the sum of $12,500 to Berg in full and complete settlement of her claims for UIM benefits under appellee's policy. Appellee made this payment with appellants' full knowledge and consent. Appellee also paid the sum of $262,500 to appellants under its UIM policy.
On February 23, 1998, appellants filed a declaratory judgment action requesting construction of the UIM policy provisions in accordance with applicable law and seeking a determination of the parties' respective rights and obligations under the policy. Specifically, appellants sought resolution of the issues concerning amounts appellee claimed it was allowed to setoff against the policy limit.
Appellee filed an answer admitting coverage, but plead as an affirmative defense a collective setoff of $37,500. Having already paid appellants the sum $262,500, appellee claimed that no more money was due to appellants under the policy.
The parties filed cross motions for summary judgment and the trial court ruled in favor of appellee on March 15, 2000. This appeal followed.
Appellants allege three assignments of error. Insofar as the basis for the resolution of those assignments of error is the same, they will be addressed together. They state, respectively:
 "The trial court erred in granting Appellee's motion for summary judgment and in denying Appellant's motion for summary judgment. The Court plainly erred in reducing the UDM policy limits by the amounts which the UDM insurer, American Select, paid to its passenger, Rebecca Berg ($12,500), and further by the amounts which the tortfeasor's insurer, Progressive, paid to passenger Berg ($12,500). Such set-off is not permissible under the Uninsured Motorist Statute, R.C. 3937.18(A)(2), as amended, and further contravenes the remedial policies and purposes underlying the statute and the liberal construction afforded same."
 "The trial court further erred in reducing the the [sic] UDM policy limits by the amounts paid by Appellee American Select to Rebecca Berg because such set-off is not permitted by the terms of the policy language itself."
 "The policy language creating the right to a setoff is itself ambiguous and must therefore be construed strictly against the insurer and liberally in favor of the insured."
A declaratory judgment action allows a court of record to declare the rights, status, and other legal relations of the parties. See Civ.R. 57 and R.C. 2721.01 et seq. Such an action is an appropriate mechanism for establishing the obligations of an insurer in a controversy between it and its insured as to the fact or extent of liability under a policy. SeeLessak v. Metropolitan Cas. Ins. Co. of N.Y. (1958), 168 Ohio St. 153,155. When a declaratory judgment action is disposed of by summary judgment our review of the trial court's resolution of legal issues is denovo. King v. Western Reserve Group (1997), 125 Ohio App.3d 1, 5. Hence, summary judgment is proper when: "(1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346.
The relevant provisions of appellee's policy regarding UIM coverage and set-offs is as follows:
"UNDERINSURED MOTORISTS
 "We will pay compensatory damages which an insured
is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
"A. Sustained by an insured; and
"B. Caused by an accident.
 "The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motorist vehicle.
 "Any judgment for damages arising out of a suit brought without our written consent is not binding on us.
"We will pay under this coverage only if:
 "A. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; * * *
"* * *
 "`Insured' as used in this Insuring Agreement means:
"A. You or any family member.
"B. Any other person occupying your covered auto.
 "C. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in A. or B. above.
 "`Underinsured motor vehicle' means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability must be:
 "A. Less than the limit of liability for this coverage; or
 "B. Reduced by payments to others injured in the accident less than the limit of liability for this coverage
"* * *
"LIMIT OF LIABILITY
 "A. If the Declarations indicates a single limit of liability for `each accident' for Uninsured/Underinsured Motorists Coverage, the limit of liability shown in the Declarations is our maximum limit of liability for all damages for bodily injury
resulting from any one accident or either Uninsured Motorists Coverage or Underinsured Motorists Coverage. This is the most we will pay regardless of the number of:
"1. Insureds;
"2. Claims made;
"3. Vehicle or premiums shown in the Declarations; or
"4. Vehicles involved in the accident.
"* * *
 "C. With respect to coverage provided for damages an insured is entitled to recover from the owner or operator of an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A or under the Uninsured Motorists Coverage of this policy.
"* * *
 "E. We will not make a duplicate payment under Uninsured Motorists Coverage or under Underinsured Motorists Coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible."
In reaching its decision, the trial court looked to R.C. 3937.18 and this court's decision in King v. Western Reserve Group (1997),125 Ohio App.3d 1.
R.C. 3937.18(A)(2) states:
 "Underinsured motorist coverage, which shall be in an amount of coverage equivalent to the automobile liability or motor vehicle liability coverage and shall provide protection for insureds thereunder for bodily injury, sickness, or disease, including death, suffered by any person insured under the policy, where the limits of coverage available for payment to the insured under all bodily injury liability bonds and insurance policies covering persons liable to the insured are less than the limits for the insured's uninsured motorist coverage. Underinsured motorist coverage is not and shall not be excess insurance to other applicable liability coverages, and shall be provided only to afford the insured an amount of protection not greater than that which would be available under the insured's uninsured motorist coverage if the person or persons liable were uninsured at the time of the accident. The policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." (Emphasis added.)
The trial court analogized this case to King, stating that the policy language involved in each case was identical. The court quoted fromKing, wherein this court stated:
 "[I]t mak[es] little sense to permit an insurer to offset from its obligations amounts that a tortfeasor's carrier happens to have paid to injured parties other than the insureds. Indeed, the trial court cogently remarked that if Lightning Rod could deduct payments made to claimants other than the insureds, then under certain circumstances the insureds would receive nothing from their underinsured motorist coverage and nothing from the tortfeasor."
The court noted as important the fact that Berg was an insured under the policy. Based on this, R.C. 3937.18(A)(2), and King, the court concluded that appellee was permitted to setoff those amounts paid to Berg (i.e., the $12,500 that appellee paid to Berg pursuant to their policy with appellants and the $12,500 that Progressive paid to Berg).
Appellee claims that it is entitled to a collective setoff of $37,500 the $12,500 that it paid to Berg under its own UIM policy, the $12,500 paid to Berg by the tortfeasor's policy, and the $12,500 paid to appellants by the tortfeasor's policy. Appellants agree that appellee is entitled to setoff the $12,500 paid to them by the tortfeasor's policy. Appellants disagree however that appellee can setoff the $12,500 paid by appellee to Berg under appellee's UIM policy and the $12,500 paid to Berg by the tortfeasor's policy. Therefore, appellants argue, they are entitled to an additional $25,000 under appellee's UIM policy.
The trial court, and to a lesser extent the parties herein, took an incorrect approach to this case from the beginning by failing to treat each insured's claim as a separate claim. The result is that the issues, as framed by the trial court, are irrelevant to the disposition of this case. Whether appellee is permitted to setoff the sum of $12,500 that it paid to Berg pursuant to their policy with appellants or the $12,500 that Progressive paid to Berg is unimportant. Even if those amounts are considered "amounts available for payment" and, therefore, can be used as a setoff, those amounts could only be used as setoffs against Berg's claim, not appellants'.
The issue presented by this case is how to apply a setoff where there are multiple claimants against a single limit policy. The relevant setoff language used in the instant policy is as follows:
"LIMIT OF LIABILITY
 "A. If the Declarations indicates a single limit of liability for `each accident' for Uninsured/Underinsured Motorists Coverage, the limit of liability shown in the Declarations is our maximum limit of liability for all damages for bodily injury
resulting from any one accident or either Uninsured Motorists Coverage or Underinsured Motorists Coverage. This is the most we will pay regardless of the number of:
"1. Insureds;
"2. Claims made;
"3. Vehicle or premiums shown in the Declarations; or
"4. Vehicles involved in the accident.
"* * *
 "C. With respect to coverage provided for damages an insured is entitled to recover from the owner or operator of an underinsured motor vehicle, the limit of liability shall be reduced by all sums paid because of bodily injury by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A or under the Uninsured Motorists Coverage of this policy."
The Ohio Supreme Court analyzed similar language in a single limit policy in Derr v. Westfield Cos. (1992), 63 Ohio St.3d 537. In Derr, the policy stated in relevant part:
"COVERAGE J — Underinsured Motorists
 "The limit of liability shown in the Declarations for Coverage J is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:
"a. Insureds;
"b. claims made;
 "c. vehicles or premiums shown in the Declarations; or
"d. vehicles involved in the accident.
 "However, the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible. * * *"
Looking at this language, the court noted, "the setoff language used in the instant policy is not clear and unambiguous as to the manner in which the setoff is to be effectuated, especially with respect to the situation where multiple insureds present claims for underinsured motorist coverage." Id. at 541-542. The court then stated, "` [l]anguage in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Id. at 542, quoting Faruque v. Provident Life Acc. Ins.Co. (1987), 31 Ohio St.3d 34, syllabus. Given the ambiguous setoff language in the subject policy, the court went on to construe the language liberally in favor of the insureds and strictly against the insurer.
First and foremost, the insurer must consider all claims separately andmay not simply apply a collective setoff against the total limit ofunderinsured motorist coverage. Id. at 541. See, also, King v. WesternReserve Group (1997), 125 Ohio App.3d 1, 11; Zelko v. Parsons (1985),29 Ohio App.3d 302. The starting point for calculating the setoff is to deduct the setoff from the per person limit of the underinsured policy.Derr, 63 Ohio St.3d at 541. When dealing with a single limit policy, the per person limit is the same as the per accident limit. Id. Therefore, each claimant or insured can seek up to the policy limit. Id. However, since a single limit policy has the same per person/per accident dollar limitation, the insurer will never have to pay more than the policy limit for any one accident. Id.
Turning to an application of these principles to the case at hand, it appears that the trial court erred in calculating the setoffs. Since the policy at issue is a single limit policy, the per person limit is the same as the per accident limit, which in this case if $300,000. Therefore, each of the two claimants or insureds, may seek up to $300,000. However, because the single limit policy has the same per person/per accident dollar limitation, appellee will never have to pay more than the $300,000 limit for any one accident.
The remaining determination is what amounts are available for payment to appellants. In this case, the tortfeasor carried an insurance policy with Progressive with a per person limit of $12,500. Since Progressive actually paid the $12,500 limit to appellants, this amount clearly qualifies as an amount "available for payment" and could be applied by appellee as a setoff against the $300,000 limit applicable to appellants. The record reveals no other "amounts available for payment" to appellants. Therefore, appellee was entitled to only setoff $12,500 against the $300,000 limit. After applying the setoff, appellants are entitled to $287,500 under their policy with appellee. Since appellee has already paid appellants $262,500 under the policy, appellee is required to pay appellants the remaining difference, $25,000, the total amount appellee and the trial court incorrectly applied as a setoff. Under this calculation, appellee does not have to pay any more than the $300,000 single policy limit.
Accordingly, appellants' assignments of error have merit.
The judgment of the trial court is hereby reversed and judgment is hereby entered in favor of appellants for an additional payment of $25,000.
Vukovich, J., concurs.
Waite, J., concurs.
[1] The undisputed facts which are relevant to the issues raised on appeal are gleaned primarily from Stipulations of Fact filed by the parties with the trial court on December 3, 1998.