OPINION
In this case, Daniel Luckenbill, Sr., appeals individually, and as administrator of the estate of Hilda Luckenbill, from a decision granting summary judgment to Hamilton Mutual Insurance Company (Hamilton). Mr. Luckenbill is the decedent's spouse and is a named insured on the Hamilton policy. Additional Appellants are Robert Arnold, Terry Arnold, Diane Arnold, Vicki Arnold, and Jacquie Kemp (Mrs. Luckenbill's five surviving adult children), plus numerous "John and Jane Does," who represent other potential wrongful death beneficiaries.
The Appellants (Plaintiffs below) raise the following assignments of error:
 I. The trial court failed to properly apply the holding of the Second Appellate District in the Estate of Isabel Fox et al., v. Auto Owners Insurance, et al., and the holdings of the Ohio Supreme Court in Motorists Mutual Insurance Company v. Andrews and Derr v. Westfield Companies.
 II. The trial court erred in its application of the decision of the Second District Appellate Court in Horstman v. Cincinnati Insurance Companies (1998), 1998 Ohio App., Lexis 3448.
 III. The trial court erred in its interpretation and application of Ohio Revised Code Section 3937.18(A)(2).
 IV. The trial court erred in finding that the decedent's children were not insureds under the subject Hamilton Mutual Insurance Policy.
 I
All four assignments of error will be addressed together, since they are related. According to the facts stipulated below, Hilda Luckenbill received fatal injuries in an automobile accident which occurred on July 18, 1997, in Darke County, Ohio. The negligent tortfeasor's insurers, State Farm Insurance and Cincinnati Insurance, each paid their $100,000 policy limits (a total of $200,000) to Daniel Luckenbill as administrator of Hilda's estate. That sum was then distributed, by order of the Darke County probate court, as follows: $114,834.08 to Daniel as surviving spouse, $5,000 to each adult child, $60,000 for attorney fees, and $165.92 to the attorneys for costs. All beneficiaries agreed on the distribution. Hamilton was not a party to the probate proceedings and did not take part in deciding how the settlement would be distributed. However, Hamilton was notified of the proposed settlement and the time and place of the hearing to approve the settlement. The parties have also stipulated that the damages arising from Mrs. Luckenbill's death exceeded $300,000.
At the time of the accident, Hamilton insured the Luckenbills and their automobiles. The policy had a single limit maximum of $100,000, and the policy period was from October 29, 1996, to October 29, 1997. After Hamilton rejected a claim for underinsured motorists (UIM) benefits, Daniel Luckenbill filed a complaint for declaratory judgment. Later, Mrs. Luckenbill's adult children and the John and Jane Doe statutory beneficiaries were added as Plaintiffs.
Before trial, both sides filed motions for summary judgment. Hamilton's motion was based on our prior decision in Horstman v. Cincinnati Ins. Co. (June 26, 1998), Montgomery App. No. 16949, unreported, and the fact that the tortfeasor's policy limits were the same as the Hamilton policy limits., Appellants' motion for summary judgment was based on the Ohio Supreme Court decision in Motorists Mut. Ins. Co. v. Andrews (1992),65 Ohio St.3d 362, and our prior decision in Estate of Fox v. Auto Owners Ins. Co. (June 12, 1998), Darke App. No. 1456, unreported. According to Appellants, under Andrews and Fox, the proper comparison in UIM cases is not between policy limits. Instead, an insured is entitled to coverage where the amount actually received from the tortfeasor is less than the UIM policy limits.
In February, 2001, we stayed our decision in this case pending resolution by the Ohio Supreme Court of conflicts in the law. Recently, that court issued opinions in Clark v. Scarpelli (2001), 91 Ohio St.3d 271, and Littrell v. Wigglesworth (2001), 91 Ohio St.3d 425, which discuss: 1) whether statutory beneficiaries may assert separate claims for wrongful death under an insurance policy; 2) the meaning of "available for payment" under R.C. 3937.18(A)(2); and 3) setoff, where multiple claims and/or policies are involved. Consequently, this matter is now ready for resolution.
A. The status of the wrongful death beneficiaries as "insureds"
Taking the assignments of error in reverse order, the first issue to be resolved is whether Mrs. Luckenbill's statutory beneficiaries are "insureds" under the Hamilton policy. In discussing this point, the trial court first noted Hamilton's agreement that Mrs. Luckenbill's adult children were "insureds" under the liability section of the policy. The court then went on to agree with Hamilton that the adult children were not "insureds" under the "definitional requirements" for UIM coverage (Part C of the policy). In this regard, the court relied on Part C, paragraph B (1) of the policy, which says that family members must reside in the same house as the named insured to be covered. Since the adult children did not live in the house with Mrs. Luckenbill, the trial court concluded that they were not "insureds" for purposes of UIM coverage.
Hamilton concedes on appeal that the trial court erred in this finding. However, Hamilton contends the error is insubstantial, because UIM coverage is not available. We agree that the trial court erred. First of all, contrary to the trial court's conclusion, Hamilton did not agree below that the adult children were "insureds" under the liability coverage. Instead, Hamilton admitted in the trial court only that the adult children were "insureds" for purposes of UIM coverage.
In this regard, Part C of the policy (Uninsured Underinsured Motorists Coverage), states in Section A that Hamilton:
 will pay damages which an "insured' is legally entitled to recover from the owner or operator of an "uninsured or underinsured motor vehicle" because of "bodily injury"
1. Sustained by an "insured"; and
2. Caused by an accident.
Part C, section B goes on to define an insured as:
1. You or any "family member":
2. Any other person "occupying" "your covered auto":
 3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.
Under the policy, "You" is defined as the named insured and spouse, if the spouse is a resident of the same household.
In the present case, Daniel and Hilda Luckenbill were both named insureds. As we said, the trial court relied on the definition in section B(1) to exclude coverage for Hilda's adult children and other wrongful death beneficiaries. However, the correct definition is found in section B(3), and indicates that UIM coverage exists for any person who is entitled to recover damages for the death of the named insured and/or spouse. Since Hilda Luckenbill's wrongful death beneficiaries are persons entitled to recover damages for her death, they are "insureds" for purposes of UIM coverage. Consequently, the fourth assignment of error has merit. However, as Hamilton contends, the error is only substantial if UIM coverage is available.
B. Whether the wrongful death claims are a single claim and are subject to collective setoff.
The next issue to be resolved is raised by the first assignment of error. In this assignment of error, Appellants contend that the wrongful death beneficiaries may assert separate, individual claims for Mrs. Luckenbill's death. Appellants further argue that the wrongful death claims are not subject to a collective setoff. To support these contentions, Appellants rely on the Ohio Supreme Court decision in Derr v. Westfield (1992), 63 Ohio St.3d 537, which was issued before Am. Sub. S.B. 20 was enacted. According to Appellants, Derr is still viable even after the amendments to the UIM law. Conversely, Hamilton claims that Derr was superseded by Am. Sub. S.B. 20. According to Hamilton, we should instead apply Stewart v. State Auto Ins. Co. (Oct. 7, 1999), Franklin App. No. 98AP-1601, unreported, discretionary appeal denied (2000),88 Ohio St.3d 1416, reconsideration denied, 88 Ohio St.3d 1490.
Like the present case, Derr involved multiple wrongful death beneficiaries and one single limit policy. In Derr, the plaintiffs were insured by Westfield under a single limit $400,000 policy and recovered only $100,000 from the tortfeasor for the wrongful death.63 Ohio St.3d at 538. Damages arising from the wrongful death exceeded $800,000. Westfield paid $300,000, but refused to pay the remaining $100,000. Id.
Relying on Wood v. Shepard (1988), 38 Ohio St.3d 86, the Ohio Supreme Court allowed the wrongful death beneficiaries to assert individual claims. 63 Ohio St.3d at 539-40. Additionally, the Court refused to let Westfield collectively set off the $100,000 that was already paid. Instead, Westfield was allowed setoff only in proportion to each individual claim. Id. at 541-42. In other words, since three claimants existed (and the Court assumed their claims were of equal value), Westfield could set off only $33,333 from each claim, and would be liable for up to $100,000 additional total for the claims.
Subsequently, in Clark v. Scarpelli (2001), 91 Ohio St.3d 271, the Ohio Supreme Court addressed a conflict between districts regarding whether the language of an insurance policy "unambiguously restricted underinsured motorists coverage to a single per person limit for all wrongful death claims derived from one deceased insured."91 Ohio St.3d at 280. In discussing this point, the Court first noted that under R.C.2125.02(A)(1), "each statutory wrongful death beneficiary's claim is considered separate and distinct from the claim of the estate, and from each other." Id. When the Court made this observation, it specifically relied on and cited its prior decision in Wood. Id.
Further, after citing Wood, the Court discussed R.C. 3937.18(H), which was enacted in 1994, after the Wood and Derr decisions. The Court noted that this newly enacted part of the UIM statute explicitly lets insurers limit claims arising out of one person's bodily injury, including death, to a single claim, notwithstanding Chap. 2125 of the Revised Code.91 Ohio St.3d at 281-82. However, the Court also stressed that the consolidation must "affirmatively appear in the policy, i.e. insurers must include language within their policies that clearly and unambiguously consolidates such claims in order to give effect to such a limit." Id. at 282 (citation omitted).
Ultimately, the Court decided that the policy in Clark contained unambiguous language limiting the beneficiaries to a single claim. Specifically, the policy stated in the "limits of liability" section that:
 "the limit for `each person' is the maximum for bodily injury sustained by any person in any one accident. Any claim for loss of consortium or injury to the relationship arising from this injury shall be included in this limit."
Id. at 283 (emphasis added). In construing this language, the Court agreed that the term "injury to the relationship" clearly referred to claims for wrongful death, because an action for wrongful death arises out of the relationship between the decedent and his or her relatives. Id.
The Court then went on to consider the rest of the first paragraph in the "limits of liability" section, which provided that the "each person" limit shown on the declarations page was the maximum amount available for bodily injury sustained by any one person in any one accident. Because only one person sustained injury, and because "injury to the relationship" encompassed wrongful death claims, the court found that all wrongful death claims were collectively included in the single each-person limit. Id. at 284. Notably, the policy in Clark had split limits, with coverage of $100,000 per person and $300,000 per accident. Therefore, the beneficiaries were collectively limited to the $100,000 single person limit.
In contrast to the insurance policy in Clark, the Hamilton policy has a single limit instead of split limits. Moreover, Hamilton's policy does not refer to claims for loss of consortium or injury to the relationship.
In this regard, Hamilton's policy provides first, in Part C (Uninsured Underinsured Motorists Coverage), that Hamilton will pay damages which an "insured" is legally entitled to recover for "bodily injury" sustained by an insured and caused by an accident. Bodily injury is defined as "bodily harm, sickness or disease, including death that results." Part C then includes as "insureds" 1) the named insured, spouse, and family members (related persons residing in the house of the named insured and spouse); 2) persons occupying the covered auto; and 3) any person for damages that person is entitled to recover because of "bodily injury" to a named insured, spouse, family member, or person occupying a covered auto. This part of the policy, unlike the policy in Clark, lacks terms and conditions indicating that all claims arising from one person's bodily injury, including death, are a single claim and are collectively subject to the per person limit. 91 Ohio St.3d at 282.
Like the policy in Clark, the Hamilton policy does have a "limits of liability" clause. This clause says, in pertinent part, that:
 A. If SPLIT limits of liability for bodily injury liability are shown in the Declarations for this coverage the limit of liability for "each person" for bodily injury is our maximum limit of liability for all damages for bodily injury sustained by any one person in any one auto accident. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for bodily injury liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.
If a SINGLE limit of liability for bodily injury liability is shown in the Declarations for this coverage, it is our maximum limit of liability for all damages from one accident.
Whether the limits shown in the Declarations are SPLIT or SINGLE, this is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Policies or bonds applicable;
4. Vehicles or premiums shown in the Declarations; or
5. Vehicles involved in the accident.
B. Any amounts otherwise payable for damages under this coverage shall be reduced by all sums:
 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.
(Emphasis added).
If the Luckenbill's policy with Hamilton had a "split limit" shown on the declarations page, we would conclude, as the Court did in Clark, that any claim arising from Mrs. Luckenbill's wrongful death would constitute a single claim and would be collectively subject to the single per person limit. However, the declarations page instead shows a "single limit" of liability. As a result, only the second paragraph pertaining to "single limits" applies. This paragraph clearly does not contain terms and conditions that, in effect, consolidate claims into a single claim and collectively subject them to the single person limit. Clark,91 Ohio St.3d at 282.
Likewise, the final paragraph of the "limits of liability" clause in Hamilton's policy does not contain appropriate language complying with R.C. 3937.18(H). Instead, this paragraph simply says that Hamilton will pay no more than the limits indicated, regardless of the number of claims, insureds, vehicles involved in the accident, and so on. Accordingly, since the policy lacks any language consolidating wrongful death claims into a single claim and subjecting them collectively to the single person limit, the claims in this case must be treated as individual, separate claims under the Hamilton policy.
As we mentioned, Hamilton relies on the Stewart case for the proposition that Derr has been superseded by Am. Sub. S.B. 20. In Stewart, the Tenth District Court of Appeals commented that:
 [w]hile plaintiff is correct that Derr is not expressly superceded by Am. Sub. S.B. No. 20, the holding in Derr is completely discredited by Am. Sub.S.B. No. 20. By expressly superceding Savoie, Am. Sub.S.B. No. 20 discredited Wood, which provided the foundation for both Savoie and Derr. Further, by its terms, Am. Sub.S.B. No. 20 overruled the premise upon which the Derr set-off rationale "hinges", that irrespective of unambiguous language in an insurance policy to the contrary, each person who is legally entitled to recover damages for wrongful death under R.C. 2125.02 has a separate claim against the per person limit of liability of the decedent's uninsured/underinsured motorist coverage.
Stewart v. State Auto. Mut. Ins. Co. (Oct. 7, 1999), Franklin App. No. 98AP-1601, unreported, 1999 WL 795680, at p. 4.
When the Tenth District made these comments, it did not have the benefit of the Ohio Supreme Court's decision in Clark, which clearly indicates that Wood has not been discredited. 91 Ohio St.3d at 281. This is consistent with the Ohio Supreme Court's prior interpretation of Am. Sub. S.B. 20. Specifically, the Court previously concluded that the General Assembly did not intend to supersede a pre-amendment case, because it gave no indication to that effect in the uncodified portions of the law. See Moore v. State Auto Mut. Ins. Co. (2000), 88 Ohio St. 27,32. In this regard, the Ohio Supreme Court relied on the fact that the General Assembly only explicitly expressed its intent to supersede Savoie v. Grange Mut. Ins. Co. (1993), 67 Ohio St.3d 500. See88 Ohio St.3d at 32.
As a further matter, Stewart is not applicable to the present case, due to differing policy provisions. Unlike the Hamilton policy (but like the Clark policy), the insurance policy in Stewart had split limits. Moreover, the Stewart policy also contained specific and unambiguous language restricting all causes of action arising from bodily injury, including death, to the single "per person" limit of liability, even if the injury gave rise to two or more separate and distinct causes of action. Stewart, 1999 WL 795680, at p. 5. In this regard, the Tenth District noted in Stewart that:
 [w]here an insurer takes advantage of Am. Sub. S.B. No. 20's addition of R.C. 3937.18(H) by including language in its policy which unambiguously indicates that all claims for damages arising out of the bodily injury or death of one person are collectively subject to the policy's per person limit of liability, the set-off issue addressed in Derr no longer exists.
Id. Applying the same reasoning, if an insurer fails to take advantage of R.C. 3937.18(H), i.e., does not include language consolidating wrongful death claims and making them collectively subject to the policy's per person limit of liability, then the setoff issue in Derr does exist.
In this context, we note that Section "B" under "limits of liability" does show Hamilton's intent to set off sums paid on the tortfeasor's behalf. As we mentioned above, this part of the policy says that "[a]ny amounts otherwise payable for damages under this coverage shall be reduced by all sums: 1. Paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible." However, this language does not indicate how setoff is to occur, particularly where multiple claimants are involved.
The language in Hamilton's policy is quite similar to the policy language in Derr, which provided that "`the limit of liability shall be reduced by all sums paid because of the bodily injury by or on behalf of persons or organizations who may be legally responsible.' "68 Ohio St.3d at 541. The Supreme Court found this language ambiguous, "especially with respect to the situation where multiple insureds present claims for underinsured motorists coverage." Id. at 541-42. Accord, De Leon v. Western Reserve Mut. Cas. Co. (Feb. 1, 1999), Putnam App. No. 12-98-8, unreported (considering policy language identical to Derr, and finding that the language inadequately describes how setoff is to be computed).
Due to the ambiguous policy language, the Ohio Supreme Court decided in Derr that a proportionate amount of setoff should be made against each claim. For purposes of discussion, the Court assumed that the three claims were of equal value. The Court then found that the insurer would be able to setoff $33,333 against each claim (the $100,000 paid divided by three). Id. at 542. However, because the Court did not know precisely how the damages were allocated among the claimants, it remanded the case for further proceedings. Id. at 543.
By analogy, based on the six identified statutory claims in the present case (Mrs. Luckenbill's spouse and five children) each individual's potential recovery would be reduced by $33,333, or one-sixth the amount paid by the tortfeasor (based on the assumption that damages are equally proportioned). As in Derr, the maximum amount Hamilton would have to pay, in any event, would be $100,000.
When we originally stayed the proceedings in this case, we believed the Ohio Supreme Court decision in Littrell v. Wigglesworth (2001),91 Ohio St.3d 425, would bring clarity to the area of UIM law. We also let the parties submit supplemental briefs addressing Littrell's effect. However, after reading Littrell numerous times, we have unresolved questions.
We begin our analysis with the Ohio Supreme Court decision in Clark, which was issued shortly before Littrell. In Clark, the Ohio Supreme Court adopted the interpretation we had previously made of the phrase "available for payment" in Estate of Fox v. Auto Owners Ins. (June 12, 1998), Darke App. No. 1456, unreported, and Clark v. Scarpelli (June 17, 1999), Montgomery App. No. 17883, unreported, affirmed (2001),91 Ohio St.3d 271. Specifically, in the syllabus in Clark, the Ohio Supreme Court held that:
 [f]or the purpose of setoff, the "amounts available for payment" language in R.C. 3937.18(A)(2) means the amounts actually accessible to and recoverable by an underinsured motorist claimant from all bodily injury liability bonds and insurance policies (including from the tortfeasor's liability carrier).
91 Ohio St.3d at 271, syllabus. In the text of Clark, the Court then extensively discussed the meaning of "available for payment," as well as the legislature's intent in amending R.C. 3937.18(A)(2).
When discussing these points, the Court relied, as we had, on Motorists Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362. In particular, the Court rejected the notion of a "limits to limits" comparison. Instead, the Court held that amendments to R.C. 3937.18 did not change the meaning of "available for payment" set out in Andrews. Id. at 277-79. Under that interpretation, the phrase means "those amounts the insured actually recovers from a tortfeasor whose liability policy is subject to the claim of the insured and also to the claims of other injured persons." Id. at 276.
In Clark, the Ohio Supreme Court did not dwell extensively on the issue of how setoff should be applied. As we mentioned earlier, Clark involved a split limits policy with unambiguous language allowing collective setoff. Our own decision in Clark limited all wrongful death claims to a single claim and allowed the insurer to collectively set off the $100,000 paid by the tortfeasor from the $100,000 per person underinsurance limits. Clark v. Scarpelli (June 17, 1999), Montgomery App. No. 17883, unreported, 1999 WL 1206662, at p. 8. As a result, we held that the wrongful death beneficiaries should not receive any further recovery. On appeal, the Ohio Supreme Court affirmed our decision, but did not discuss setoff in any detail.
Subsequently, in Littrell, the Court applied "setoff" in the context of three pending cases. Littrell, (2001), 91 Ohio St.3d 425. Unfortunately, the decision is very confusing.
First, rather than even mentioning policy provisions, the Court focused solely on something it labeled "Statutory Setoff Against Underinsured Motorists Coverage." Id. at 428. In this regard, the Court began by simply quoting R.C. 3937.18(A)(2), as amended by Am. Sub. S.B. No. 20 in October, 1994. The Court then set out the questions at issue in the three pending cases. These questions were framed somewhat differently for each case. In one (Stickney), the issue was whether the term "amounts available for payment" in R.C. 3937.18(A)(2) should be construed to mean those amounts the insured actually receives from the tortfeasor. Id. at 429. In another (Karr), the issue was whether UIM limits should be compared to the tortfeasor's liability limits or to the amounts a claimant actually receives. The issue in the final case (Littrell) was whether recovery is precluded where the UIM and tortfeasor's limits are identical, but the insured does not recover the tortfeasor's limits, due to multiple claimants. Id.
In addressing these issues, the Court first reiterated its prior holding in Clark, i.e., that for purposes of setoff, "amounts available for payment" means "the amounts actually accessible to and recoverable by an insured." Id. at 430. Next, the Court said:
 In Clark, we stated that the original purpose of * * * [UIM] coverage was to ensure that persons injured by an underinsured motorist would receive at least the same amount of total compensation as they would have received had they been injured by an uninsured motorist. * * * We further emphasized that pursuant to R.C. 3937.18(A)(2), as amended by S.B. 20, * * * [UIM] coverage was not intended to be excess insurance to the tortfeasor's liability coverage and that the underinsured motorist should never be afforded greater coverage than that which would be available had the tortfeasor been uninsured.
Id., citing Clark, 91 Ohio St.3d at 276. After making these comments, the Court then discussed the facts of the pending cases and decided whether the parties involved were entitled to further recovery.
The first case (Littrell) involved two wrongful deaths, bodily injuries to several persons, and multiple policies. Id. at 426. In Littrell, five occupants of a minivan were involved in an accident, and two were killed. The tortfeasor's carrier had available coverage of $1,300,000, and this amount was allocated to the five occupants of the van, as follows: $460,000 to Ina Littrell for her personal injuries; $415,000 to the estate of John Littrell, Jr. (Ina's husband); $275,000 to the estate of Stella Pratt (Ina's mother); and $75,000 each to Dennis and Suzanne Littrell (Ina and John's children) for their own personal injuries. Id. at 431. See also, Littrell v. Wigglesworth (March 13, 2000), Butler App. Nos. CA99-05-092 and 99-08-041, unreported, 2000 WL 270038, at p. 1.
At the time of the accident, John Littrell was driving the minivan, which belonged to his mother-in-law. Colonial Insurance insured the minivan and settled the suit before the Supreme Court decision. Westfield insured the "occupants" of the minivan, and had a single limit policy of $500,000. 91 Ohio St.3d at 431. Because the "amount available" to the five occupants of the minivan would have been $500,000 if the tortfeasor were uninsured, the Court concluded that the occupants were not entitled to UIM benefits from Westfield. Id. In a footnote, the Court commented that if each occupant had a "separate" policy of insurance, then each would have had coverage under his or her own policy up to the single policy limits less any sums received from the tortfeasor's policy. Id. at 431, n. 7.
The Court then went on to consider the claim of a grandson of Stella Pratt, who had received $8,000 from the $275,000 paid to Pratt's estate. Id. at 432. The grandson (Ernie Pratt) was insured by Allstate, with UIM limits of $25,000 per person and $50,000 per accident. Using the same analysis, i.e., what the recovery ould have been if the tortfeasor were uninsured, the court decided that Ernie was entitled to UIM coverage up to the single per person limit of his policy, reduced by the amount Ernie received from the tortfeasor. In this regard, the court commented that:
 While it is true that the tortfeasor's automobile liability proceeds far exceeded the limits of Ernie's Allstate policy, the entire amount of the tortfeasor's policy has been allocated for the wrongful death and personal injuries suffered by the five occupants of the Pratt minivan. Allstate would have us apply the entire $1,300,000 settlement from the tortfeasor as a setoff against the limits of Ernie's automobile liability policy when, in fact, those proceeds have been exhausted by payments to parties other than Allstate's own insured, Ernie. For the policy reasons set forth by the General Assembly and explained in both Clark and herein, we reject this argument of Allstate.
 Moreover, it is only because Ernie has a separate automobile liability policy through Allstate that he is able to recover underinsured motorist benefits. Ernie was not an insured under either the Westfield or Colonial Penn policies that provided underinsured coverage for the occupants of the Pratt minivan. As a result, if Ernie did not have a separate contract of automobile liability insurance with Allstate, he would have no claim at all for underinsured motorist coverage regardless of the settlement received from the tortfeasor or the policy limits provided in the Westfield or Colonial Penn policies.
Id. at 432.
As a preliminary point, we note that the Ohio Supreme Court's conclusion about Ernie's status as an "insured" under the Westfield and Colonial policies appears to be incorrect. Specifically, the appellate court decision in Littrell says, regarding the Westfield and Colonial Penn policies, that "[t]hese two policies are applicable to all five insureds present in the minivan and John Jr. and Stella's wrongful death beneficiaries." Littrell (March 13, 2000), Butler App. Nos. CA99-05-092 and 99-08-041, unreported, 2000 WL 270038, at p. 8. The appellate court in Littrell also commented later in its decision that
 [r]ecovery under the Colonial Penn and Westfield UIM policies is sought for injuries to the five occupants of the car and their wrongful death beneficiaries. Under both policies, the covered "insureds," either as occupants of the minivan or as wrongful death beneficiaries, are the same individuals entitled to damages under the State Farm liability coverage."
Id. at 11.
Consequently, Stella Pratt's wrongful death beneficiaries, including Ernie, would have been "insureds" under both the Westfield and Colonial Penn policies. As a grandson, Ernie was not rebuttably presumed to have suffered damages under the wrongful death statute. However, that did not affect his status as a potential wrongful death beneficiary. Specifically, R.C. 2125.02(A)(1) authorizes a wrongful death action for the benefit of the surviving spouse, children, parents, and other next of kin of the decedent. Grandchildren are included as "next of kin" for purpose of this statute. See, Buchert v. Newman (1993), 90 Ohio App.3d 382,384; Senig v. Nationwide Mut. Ins. Co. (1992), 76 Ohio App.3d 565,573-574; and Ramage v. Central Ohio Emergency Serv., Inc. (1992),64 Ohio St.3d 97.
Therefore, Ernie would have been included — at least according to the appellate court decision in Littrell — as an insured under the Westfield and Colonial Penn policies. We note that this is also consistent with the law in effect at the time. Specifically, under Sexton v. State Farm Mut. Auto. Ins. Co. (1982), 69 Ohio St.2d 431, and Moore, supra, (2000), 88 Ohio St. 27, provisions requiring that insureds sustain bodily injury in order to recover UIM benefits were not enforceable.
The treatment of the Littrell claims is additionally perplexing because the Court appears to have considered the claims of multiple parties (even those with individual and separate claims, as opposed to derivative claims) as a collective entity, based solely on whether the claims were asserted under a single policy of insurance. Unfortunately, the Court did not point to statutory or policy provisions that authorize such a distinction. In fact, statutory discussion in Littrell is minimal. And, as we said, policy language is not even mentioned.
One possible explanation is that the Court's reference in Littrell to "statutory setoff" was significant. In this regard, the Court focused on the last sentence in R.C. 3937.18(A)(2), which states that "[t]he policy limits of the underinsured motorist coverage shall be reduced by those amounts available for payment under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." 91 Ohio St.3d at 429 (emphasis in original). Previously, the statute said that "[t]he limits of liability for an insurer providing underinsured motorist coverage shall be the limits of such coverage, less those amounts actually recovered under all applicable bodily injury liability bonds and insurance policies covering persons liable to the insured." Motorist Mut. Ins. Co. v. Andrews (1992), 65 Ohio St.3d 362,364.
Due to the change in wording, the Ohio Supreme Court could have concluded that the legislature intended to allow setoff of the tortfeasor's policy limits against the limits of the UIM policy. However, the Court explicitly rejected that approach, again relying on Clark. See 91 Ohio St.3d at 430. As we mentioned earlier, the Clark decision discussed the amendment to R.C. 3937.18(A)(2) at length. Among other things, the Court stressed in Clark that when the legislature amended the statute, it would have been aware of the interpretation in Andrews of the term "amount available for payment."91 Ohio St.3d at 277-78. Despite this fact, the legislature chose to use the same phrase that had been interpreted in Andrews. Accordingly, the Court said:
 Our decision in Andrews completely and properly resolves the issue in this matter. The court in Andrews noted that a limits-to-limits comparison approach is proper only in situations where a single claimant is involved. * * * Therein lies the distinction. The court, accordingly, determined that in situations where "the claims of multiple claimants result in reduction of the amount available for payment to the insured below the underinsured motorist limits," the insured is entitled to underinsured motorist coverage. * * * We noted that a strict policy-limits-to-policy-limits approach in situations involving multiple claimants would not give full effect to the public policy behind the General Assembly's enactment of the underinsured motorist statute.
Id. at 278-79. The Court also noted that "the enactment of S.B. 20 had no effect whatsoever on the validity of our holding in Andrews." Id. at 279. Finally, the Court said, "[i]t would be manifestly absurd to interpret the S.B. 20 amendments to R.C. 3937.18(A)(2) as permitting an insurer to offset, against its own insured, those amounts that a tortfeasor's automobile liability carrier has paid to other injured parties." Id.
Given these comments, and due to the existence of multiple injured claimants in Littrell, one would expect the Court to consider the amounts actually available to each injured claimant. However, the Court did not do that. Instead, the Court appears to have done indirectly what it said it could not do directly, i.e., compare the $1,300,000 policy limits of the tortfeasor to the $500,000 policy limits of the UIM carrier. This is inconsistent with the approach taken in Andrews and is also inconsistent with Derr.
To illustrate the inconsistency, we will consider the claims of the three surviving occupants of the minivan, i.e., Ina Littrell and her two children, Dennis and Suzanne. Each of these three individuals had a separate claim for his or her own bodily injury. Additionally, each had separate and distinct claims as beneficiaries for the wrongful deaths of the other two occupants of the minivan (or at least, this appears to be the case, based on the facts of record. Specifically, Ina had claims for the wrongful deaths of her husband and mother, as well as a claim for her own bodily injury. Likewise, the two children each had a claim for their own injuries and claims for the deaths of their father and grandmother).
If Andrews and Derr were properly applied in Littrell, the UIM claims should have been allowed, since the "amount available" to the three surviving occupants of the Littrell minivan who sustained bodily injury was less than Westfield's $500,000 policy limits. Specifically, Ina Littrell recovered only $460,000 for her personal injuries, and the two minor children recovered only $75,000 each for their personal injury claims. Each claimant should, therefore, have been able to make a claim against the Westfield policy, up to the $500,000 policy limits. Likewise, the amounts available for wrongful death claims for the deaths of John Littrell and Stella Pratt ($415,000 and $275,000 respectively) were less than the Westfield policy limits, and should have been allowed.
However, instead of considering these claims individually, the Court in Littrell consolidated all claims together, and in a quite simplistic analysis, decided that 1) since the occupants of the minivan would have been entitled only to $500,000 if no insurance had existed, and 2) the tortfeasor had $1,300,000 insurance, the "occupants" of the minivan would not be entitled to UIM benefits. 91 Ohio St.3d at 431.
In comparison, Andrews involved three occupants of a car — a grandfather and his two grandchildren. The grandfather was seriously injured, the grandson was killed, and the granddaughter was injured as the result of an auto accident. 65 Ohio St.3d at 363. Of the $1,000,000 available from the tortfeasor, the grandfather received $997,000, the grandson's estate received $1,000, and the granddaughter received $1,000 for her injuries. The remaining $1,000 was given to the grandfather's wife.
Subsequently, the parents of the deceased child made a claim with their insurer (Motorists Mutual), for UIM benefits for themselves, their son's estate, and their daughter's injuries. Although some dispute existed about the policy limits, the limits appeared to be at least $25,000 per person and $50,000 per accident. Id. After denying coverage, Motorists Mutual filed a declaratory judgment action. Id. At the trial level, the court denied UIM benefits because the tortfeasor's policy limits were higher than the limits of the Motorists Mutual policy. In particular, the trial court relied on Hill v. Allstate (1990),50 Ohio St.3d 243, which had adopted a "limits to limits" comparison. On appeal, however, the Ohio Supreme Court disagreed with this approach. First, the Court discussed the public policy behind UIM coverage. Then, the Court distinguished Hill, stating that
 [t]he Hill rationale is appropriate in a case involving a single claimant. However, Hill fails to address the situation where, as in the case at bar, the claims of multiple claimants result in reduction of the amount available for payment to the insured below the underinsured motorist limits.
65 Ohio St.3d at 366.
Following these remarks, the Ohio Supreme Court considered the meaning of "available for payment" as used in R.C. 3937.18(A)(2), and concluded that:
 when determining whether a motorist is underinsured, the amount actually available for payment under the tortfeasor's policy must be compared with the insured's underinsured motorist coverage limits. If the amount available for payment is less than the insured's underinsured policy limits, then the insured is entitled to underinsured motorist coverage.
Id. at 366-67 (emphasis in original). As we mentioned before, this interpretation was specifically validated in Clark and was found not to have been altered by the later amendments to R.C. 3937.18. Clark,91 Ohio St.3d at 278-79.
Ultimately, based on its interpretation of "available for payment," the Court in Andrews resolved the case before it by stating that:
 we find that Mac's Transport was an underinsured motorist within the meaning of R.C. 3937.18(A)(2). The decision is achieved by comparing the amount available for payment to the Andrewses, zero, to the underinsured motorist coverage limits, at least $25,000 per person, $50,000 per occurrence. To hold otherwise would place the Andrewses in a better position had they been struck by an uninsured vehicle. * * * This decision also recognizes the importance of the insurance protection which Dennis Andrews sought. Dennis contracted for coverage from his insurer for at least $25,000 per person/$50,000 per occurrence in the event of an accident with an underinsured motorist. Our decision allows the Andrewses to recover that for which Dennis contracted.
65 Ohio St.3d at 367.
There is little distinction between the fact situations in Andrews and Littrell. Using the logic applied in Littrell, the grandchildren in Andrews had $1,000,000 "available" from the tortfeasor and should not have been able to recover from their own insurer. The only difference in the cases is that the grandfather did not appear to be an "insured" under the grandchildren's policy — although he probably would have been an insured, i.e., a wrongful death beneficiary, for purposes of his grandson's death. This difference relates back to the Court's observation in Littrell that recovery for the occupants of the minivan would be possible if they had "separate" policies of insurance.91 Ohio St.3d at 432, n. 7. Again, however, this makes little sense. No one could argue with a straight face that insurers should be able to set off payments made to persons other than their own insureds. By the same token, we can think of no convincing reason why insurers should be able to nullify coverage for which they charge premiums by combining payments made to all potential insured parties, even if those parties have completely separate and independent claims. However, that is what was done in Littrell. This approach also contradicts the reliance on policy provisions outlined in Derr.
Apparently, the sole issue now in multiple claimant cases is whether any injured party compensated by a tortfeasor may also be classified as an insured under the UIM policy. If so, regardless of policy content, the UIM carrier may statutorily set off all amounts received by all persons who could be considered "insureds" under the policy. This would be true regardless of the amount, if any, that a particular injured insured actually recovers from the tortfeasor. In other words, an insured party could have recovered nothing from the tortfeasor due to the severity of the injuries of other persons, but would still be entitled to nothing under his or her own policy, so long as any other party injured in the accident could be classified as an insured under the policy.
We do not believe this is what consumers think they are buying when they purchase underinsured motorists coverage. To use a concrete example, assume that three occupants of a vehicle are severely injured in an auto accident. The tortfeasor has $500,000 coverage. Likewise, the vehicle has $500,000 in single limit UIM coverage. Family member A has damages of $1,000,000 and receives $350,000 from the tortfeasor, due to the greater severity of her injuries. Family member B has $500,000 in damages, and receives $75,000. Occupant C has damages of $500,000, and also receives $75,000. C is a non-family member and stranger to the policy, but is an insured for UIM purposes due to her presence in a covered auto. Despite the fact that premiums have been paid for coverage, none of these parties will be able to collect anything from the UIM carrier, since their claims will be considered collectively as one for purposes of setoff. This is the fact situation in Littrell. And, as we said, Littrell did not point to any basis for this in the statute, nor were any policy provisions cited that would authorize treating separate claims in this manner.
Similar results also occurred in the two other pending cases considered in Littrell. For example, the appellant in Stickney received $125,000 from the tortfeasor's liability carrier for his daughter's wrongful death. 91 Ohio St.3d at 433. However, the Court's sole focus was on what the wrongful death beneficiaries could have recovered if the tortfeasor lacked insurance. Consequently, since the UIM limits were $100,000, no further coverage was available. Id.
Finally, in Karr, $100,000 from the tortfeasor's liability carrier was distributed equally among five statutory beneficiaries. However, due to attorney fees, expenses, and a statutory subrogation lien, each beneficiary received only about $9,000. 91 Ohio St.3d at 434. In deciding if three of the beneficiaries were entitled to further UIM coverage under their own insurance policies, the Court charged each beneficiary with attorney fees and expenses, but not with the subrogation lien. Id. Again, the Court's focus, after deciding these points, was what the claimants would have received if the accident were caused by an uninsured motorist. Id. at 434-35. Although the Court did not comment on the issue of "separate" insurance policies, the three claimants before the Court in Karr were adult children of the decedent, and the policies were not ones which also insured the decedent. See, e.g., Karr v. Borchardt (Dec. 24, 1998), Seneca App. No. 13-98-33, unreported.
Given the above discussion, we face a difficult quandary. Do we follow authority that has never been overruled or even criticized by the Ohio Supreme Court? Derr has not been overruled, and Andrews has recently been specifically approved. Conversely, should we apply the latest in a long line of inconsistent decisions? Unfortunately, the law in this area is so filled with contradiction, tortured analysis, and legal confusion that consistent decisions may no longer be possible.
In this regard, Hamilton offers a potential solution by suggesting that this case is not controlled by UIM law. Specifically, Hamilton argues that R.C. 3937.18(A) requires provision of UIM coverage only for persons "insured" for liability purposes. In this case, that would primarily be Daniel and Hilda Luckenbill, their resident family members, and anyone driving a covered auto. Since the statutory beneficiaries were not covered under the liability portion of the policy, Hamilton contends it was not legally required to provide UIM coverage. From this fact, Hamilton then reasons that UIM caselaw is completely inapplicable and the rights of the beneficiaries could be restricted in any way that Hamilton wished. Hamilton concedes that no authority exists on this point, but believes its interpretation is required based on the wording of the statute.
Regrettably, we cannot solve the problem by agreeing with Hamilton. First of all, Daniel Luckenbill, a named insured, and wrongful death beneficiary, is clearly included within the liability coverage of the policy. Second, whether the other beneficiaries were defined as insureds under the liability part of the policy is irrelevant. They were clearly included as insureds for purposes of UIM coverage. Significantly, we have stressed before that
 [e]ven after amendment, R.C. 3937.18 does not establish uniform policy provisions or language, but instead sets forth a list of minimum requirements for uninsured and underinsured motorists coverage. * * * As long as insurers comply with the minimum requirements of the statute, they are free to structure their policies in any way desired. Insurers may also provide coverage that exceeds the requirements of the statute, and it is only by looking at the policy provisions that a court can decide what coverage was actually afforded.
Estate of Fox v. Auto Owners Ins. (June 12, 1998), Montgomery App. No. 1456, unreported, 1998 WL 309212, at p. 4. As we mentioned, we have examined the Hamilton policy provisions in some detail. Since Hamilton chose to include wrongful death beneficiaries as insureds for purposes of UIM coverage, Hamilton is bound by its own choice.
By the same token, we feel that Hamilton should also be bound by its choice of other policy provisions. As we mentioned earlier, Hamilton did not effectively limit the beneficiaries to a single per person claim and did not effectively provide for collective setoff. Hamilton also inserted an ambiguous reduction or setoff clause that did not adequately indicate how setoff should be applied to multiple claims. Derr,68 Ohio St.3d at 541-42. Notably, Derr was decided in 1992. In spite of this existing case, Hamilton inserted a similar ambiguous setoff clause in the Luckenbill policy (which was issued in 1996). Normally, we would assume that Hamilton was aware of, and would be bound by, the existing construction of the clause. Appellants would, therefore, be entitled to assert separate claims for the $100,000 in UIM coverage.
Nonetheless, despite our belief that Hamilton should be bound by its policy provisions, we feel compelled to follow the most recent decision of the Ohio Supreme Court. Accordingly, based on Littrell, Appellants are not entitled to a further recovery from Hamilton because the estate has already received $200,000 from the tortfeasor's liability carrier.
In view of the preceding analysis, the first assignment of error is overruled. Further, since UIM coverage is unavailable, the trial court's error concerning the status of the wrongful death beneficiaries was not substantial. Accordingly, the fourth assignment of error is also overruled.
 C. The application of Horstman v. Cincinnati Insurance Companies
Appellants' second assignment of error focuses on the trial court's error in applying our prior decision in Horstman v. The Cincinnati Ins. Co. (June 26, 1998), Montgomery App. No. 16949, unreported. We find Horstman inapplicable to the present case.
First of all, we vacated the decision in Horstman in September, 1998, and remanded the case to the trial court. See Horstman v. The Cincinnati Ins. Co. (Nov. 17, 2000), unreported, 2000 WL 1720139, at p. 1 [noting that our original Horstman decision was reversed in Horstman v. The Cincinnati Ins. Co. (September 14, 1998), Montgomery App. No. 16849, unreported]. The trial court in the present case was probably unaware of this fact, since the September, 1998 decision in Horstman does not appear to have been published, even unofficially.
Second, Horstman is inapplicable in any event, because it did not involve wrongful death, a single limit policy, or policy provisions similar to the ones in the present case. Accordingly, the trial court erred in relying on Horstman. However, the error is harmless, in light of our disposition of the first assignment of error. Accordingly, the second assignment of error is overruled.
 D. Interpretation and Application of R.C. 3937.18(A)(2)
In the third assignment of error, Appellants claim that the trial court erred in interpreting and applying R.C. 3937.18(A)(2). Most of the discussion under this assignment of error relates to issues already covered, i.e., the application of Derr and Littrell. However, one point deserves mention. According to Appellants, tortfeasors are required by statute to maintain a minimum of $12,500 in liability coverage. Appellants believe that if Derr is not applied, at least this much money would be deducted from every UIM claim. Consequently, insurers are charging premiums for coverages they will never have to pay an insured, regardless of the number of insureds or their damages. Appellants claim that this practice directly violates R.C. 3901.20. Hamilton objects to consideration of this point, since Appellants did not discuss the issue in the trial court.
R.C. 3901.20 provides that:
 [n]o person shall engage in this state in any trade practice which is defined in sections 3901.19 to 3901.23 of the Revised Code as, or determined pursuant to those sections to be, an unfair or deceptive act or practice in the business of insurance.
We have previously held that R.C. Chap. 3901 does not create an implied private right of action. Springfield Impregnators, Inc. v. Ohio State Life Ins. Co. (March 23, 1994), Clark App. No. C.A. 3090, unreported. See also, Strack v. Westfield Companies (1986), 33 Ohio App.3d 336. However, the lack of a private cause of action for damages does not mean that courts are necessarily precluded from considering the content of R.C. Chap. 3901 within the context of a different cause of action. For example, in Dental Care Plus, Inc. v. Sunderland (1999),135 Ohio App.3d 574, we indicated that:
 R.C. 3901.19 et seq. * * * do not deprive persons affected by such acts or practices of their right to an action for damages for defamation or interference with their business activities.
Id. at 577-78. We did note in Dental Care Plus that the doctrine of "primary jurisdiction" may still prevent courts from hearing such an action. Id. at 578. This doctrine:
 comes into play if the use of administrative proceedings will contribute to a meaningful resolution of the lawsuit. If it will, the trial court should defer any action until that determination is made by the agency.
Id.
Accordingly, the trial court in this case may have been able to consider the impact of statutory violations on the validity of particular insurance policy provisions. However, we need not decide this point, since we agree with Hamilton that Appellants did not properly raise the matter in the trial court. Specifically, the complaint in the present case does not mention any violation of R.C. 3901.20. Instead, Appellants simply raised the constitutionality of restricting the right of recovery for Hilda Luckenbill's death. R.C. 3901.20 was also not addressed in Appellants' summary judgment motion and was not considered by the trial court in ruling on summary judgment.
Although we have discretion to address such error under the plain error rule, we decline to do so, since we think the trial court should have been given a chance to rule on the issue. Moreover, any plain error did not result in a manifest miscarriage of justice. Stiver v. Miami Valley Cable Council (1995), 105 Ohio App.3d 313, 318. Specifically, even if this matter had been properly raised, we see no evidence of deceptive acts. Although court decisions may render insurance coverage illusory, that does not mean the insurer acted deceptively when coverage was originally provided. Consequently, the third assignment of error is also overruled.
Based on the preceding discussion, all four assignments of error are overruled and the judgment of the trial court is affirmed.
WOLFF, P.J., and YOUNG, J., concur.